STATE OF NEBRASKA, APPELLEE, v. THOMAS E. SMITH, APPELLANT.
488 N.W.2d 33

Filed August 21, 1992.    No. S-91-328.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Don Stenberg, Attorney General, William L. Howland, and, on brief, Mark L. Ells for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Thomas E. Smith appeals his jury conviction in the district court for Douglas County on two counts of first degree sexual assault on a 13-year-old female child.

On appeal, Smith claims that the trial court erred (1) in admitting the victim's diary into evidence, in violation of the hearsay rules; (2) by allowing police officers and the victim's mother to testify about details of the assault; (3) in overruling Smith's motion for a mistrial; (4) by allowing the prosecutor to ask irrelevant and prejudicial questions; and (5) because "the cumulated error in the trial was such that the defendant was denied his fundamental right to a fair trial."

Because the trial court erred in allowing into evidence inadmissible hearsay testimony and in overruling Smith's motion for a mistrial, Smith's conviction on each count is reversed, and the cause is remanded for further proceedings consistent with this opinion.

The record reveals that the 13-year-old victim was Smith's stepdaughter. Smith had lived with the victim's family since 1981 and had married the victim's mother in 1987. The victim and Smith each testified that they had enjoyed a good relationship. Smith stated that he referred to the victim as his own child, that she called him "dad," and that whenever he went somewhere, she would want to "tag along." Smith described his relationship with his wife as "shaky" and marked by frequent separations due to interference from his in-laws.

In the early morning hours of June 30, 1990, the victim informed her aunt and her mother that Smith had been molesting her. The victim's mother immediately confronted Smith with a knife and forced him to leave the family home. Police officers subsequently conducted three interviews with the victim, during which she related several alleged incidents of sexual contact with her stepfather, including digital penetration. Smith was charged with two counts of first degree sexual assault on a child and one count of tampering with a witness. Smith was found not guilty on the tampering charge,

and that charge is not an issue in this appeal.

Police Officer Kristy Cook testified that she was called to the victim's home the morning of June 30, 1990, to investigate a reported sexual assault. Over a hearsay objection, Officer Cook was allowed to testify that the victim recounted six separate incidents of digital penetration by Smith. The officer was asked by the State if she believed the victim. After the officer answered, "Yes, I did," Smith objected, "That's invading the province of the jury." The court sustained the objection, ordered the answer stricken from the record, and instructed the jury to disregard it.

The victim testified about several alleged incidents of sexual contact with her stepfather, two of which included digital penetration. Over hearsay and relevancy objections, the court admitted into evidence the victim's diary, which contained the following entry, dated June 23, 1990:

> Yesterday which was Friday my sister had a routen attitude agains people but my aunt found out her problem. I fell like jumping over the nearest bridge and then maybe ever will be happy. I want to tell some about what my Dad is doing to me and if I went and try to tell someone then they won't believe me But If I don't tell someone then I might just kill me or my Dad one of these days. Because I fell dumb and like I am scared of people like my Dad. Thanks for letting me write in you See you next time

Admission of this passage into evidence had also been the subject of Smith's pretrial motion in limine, which was overruled. After testifying that the passage referred to "the sexual assault he [Smith] did to me," the victim was permitted to read the passage aloud to the jury.

The victim's mother testified that she was awakened by her sister around 3 a.m. on June 30, 1990. The mother said the victim was curled up in a fetal position on her aunt's lap. She testified that the victim appeared shaken and was crying and that the victim told her that "her daddy had been doing things to her." Smith's hearsay objection was overruled. The victim's mother then testified that the victim stated that "her stepfather Tom had been touching her in places he shouldn't be."

Police Officer Teresa Thorson testified that the victim told

her that she had been sexually assaulted by her stepfather. The officer was permitted to testify over a continuing hearsay objection as to details of four alleged incidents of sexual contact between the victim and her stepfather, two of which included digital penetration.

Smith testified that the continuing problems with his in-laws caused him to seek longer work hours and that his decreased time at home provoked resentment in the victim. Smith denied that he digitally penetrated the victim.

On cross-examination Smith was asked, in part, the following series of questions:

[Prosecutor:] Do you have an avid interest in sexual matters, Mr. Smith?

[Defense:] Judge, I would object to that as to form of the question, it's not relevant, nothing to do with this at all.

THE COURT: Sustained.

. . . .

[Prosecutor:] May I reframe it?

THE COURT: . . . [Y]ou may, because I don't know what "avid" means.

[Prosecutor:] Do you have an interest in sexual matters, Mr. Smith?

[Defense:] I would object —

[Smith:] Of course.

[Defense:] Object again as to relevance. I would assume —

THE COURT: I'm going to sustain the objection on the basis of foundation as to what you mean by "sexual matters." That's a broad, broad, broad area, Counsel.

[Prosecutor:] Do you enjoy reading about sexual activities?

[Defense:] Judge, again, I will object as to the relevancy and it is too broad. I would assume that there's very few of us that don't. It has nothing to do with the issue here in trial.

THE COURT: Well, I think we have to be more specific. I'm going to sustain that as to "sexual activity."

With regard to a telephone call made by Smith to his wife, the

following exchange took place:

[Prosecutor:] And what is the name of the establishment that you made the telephone call from?

[Smith:] The Only Chance Saloon.

[Prosecutor:] And that is a topless go-go bar, is it not?

. . . .

[Defense:] I will object as to the relevancy of this, would ask that you give an instruction that the jury disregard it, and would also make a motion for a mistrial for such irrelevant and uncalled for questions.

. . . .

THE COURT: Overruled. He may answer if he knows.

[Prosecutor:] And that is a topless —

THE COURT: And, I'm sorry, the objection is overruled and your motion is overruled.

[Prosecutor:] And that is a topless go-go bar, is it not, Mr. Smith?

[Smith:] Yes.

. . . .

[Prosecutor:] Do you like to go to establishments like that, Mr. Smith?

[Defense:] I would object as to relevancy of this, Your Honor.

THE COURT: Overruled. He may answer.

[Prosecutor:] You may answer.

[Smith:] On occasion.

. . . .

[Prosecutor:] . . . [H]ave you gone to that establishment on more than one occasion?

[Defense:] Objection as to relevancy.

THE COURT: Overruled. He may answer.

[Smith:] Maybe once a year.

. . . .

[Prosecutor:] In addition to trips to the Only Chance Saloon, do you engage in any other forms of adult entertainment?

[Defense:] I object, Your Honor, relevancy and form of the question.

THE COURT: Sustained.

. . . .

[Prosecutor:] Mr. Smith, were you having sexual difficulties with your wife in the period of May and June of 1990?

[Defense:] Asked and answered, Judge.

THE COURT: I think it was, but overruled. He may answer.

[Smith:] Yes.

[Prosecutor:] And you were not receiving sexual gratification from her at that time; is that correct?

[Smith:] It was more so due to our working hours than anything else.

[Prosecutor:] Did you obtain that gratification from [the victim]?

[Smith:] No.

The jury found Smith guilty of two counts of first degree sexual assault on a child. He was sentenced to 1 to 3 years' imprisonment on each count, to run concurrently, and given credit for 233 days of time served.

## ADMISSIBILITY OF DIARY

Smith claims the district court erred in admitting the passage from the victim's diary into evidence, in violation of the hearsay rules. At a pretrial motion in limine, the court ruled that the June 23, 1990, diary entry qualified as "excited utterance or res gestae." The State argues that it is also admissible under Neb. Rev. Stat. § 27-801(4)(a)(ii) (Reissue 1989) as a prior consistent statement or under Neb. Rev. Stat. § 27-803(2) (Reissue 1989) as a statement of the declarant's then existing state of mind. Because the diary entry constitutes inadmissible hearsay not subject to any exception, the trial court erred in admitting it into evidence.

"A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rules. § 27-803(1).

For a statement to qualify as an excited utterance, the following criteria must be established: (1) There must have been a startling event, (2) the statement must relate to the

event, and (3) the statement must have been made by the declarant while under the stress of the event. . . . The key requirement is spontaneity, which "requires a showing the statements were made without time for conscious reflection."

*In re Interest of D.P.Y. and J.L.Y.*, 239 Neb. 647, 651, 477 N.W.2d 573, 576 (1991).

The record does not reflect that the entry was written while the victim was still under the stress of the event. In addition, the very purpose of a diary being to record the conscious reflections of the writer, it is clearly inadmissible as an excited utterance.

At the pretrial motion in limine, the State argued that the diary entry was admissible under § 27-801(4)(a)(ii), which provides that

[a] statement is not hearsay if:

. . . The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with his testimony and is offered to rebut an express or implied charge against him or recent fabrication or improper influence or motive . . . .

The State contends that the diary was admissible to rebut Smith's claim that the victim's report of sexual abuse was a lie. However, "[s]ince [a] prior consistent statement may be accorded substantive use only if it is used to *rebut* an express or implied charge, impeachment of the witness is a precondition." (Emphasis in original.) 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 801(d)(1)(B)[01] at 801-190 and 801-192 (1991).

In *U.S. v. Red Feather*, 865 F.2d 169 (8th Cir. 1989), the diary of a sexual assault victim was admissible to bolster her credibility and to rehabilitate her as a witness *after* the defendant had implied on cross-examination that the victim had been coached by social services counselors and was prejudiced against the defendant, her father, because of punishment or discipline by him. See, also, *State v. Packett*, 206 Neb. 548, 294 N.W.2d 605 (1980) (prior consistent statements of witness are not admissible as corroborative evidence except to

rebut express or implied charge against him of recent fabrication or improper influence or motive); *U.S. v. Navarro-Varelas*, 541 F.2d 1331, 1334 (9th Cir. 1976) (" '[w]hen the witness has merely testified on direct examination, without any impeachment, proof of consistent statements is unnecessary and valueless. . . . Such evidence would ordinarily be cumbersome to the trial and is ordinarily rejected' ") (citing 4 John H. Wigmore, Evidence in Trials at Common Law § 1124 (James H. Chadbourn rev. 1972)).

In this case, the diary was admitted into evidence during the course of direct examination of the victim and before any evidence had been presented of an express or implied charge against her or recent fabrication or motive. At this point, the diary was inadmissible as a prior consistent statement. Since it was not offered after evidence had been presented implying that the victim was lying, we need not discuss that issue further.

The State is also incorrect in its assertion that the diary was admissible under § 27-803(2), which sets forth a hearsay exception for

> [a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

The victim's state of mind or emotion at the time she made the entry in her diary is not relevant. In addition, hearsay statements of memory offered to prove the fact remembered are not admissible under the state-of-mind exception. *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990).

### TESTIMONY OF OFFICERS AND VICTIM'S MOTHER

The trial court overruled Smith's hearsay objection to the testimony of Officer Cook regarding details of the sexual assaults. Citing *State v. Plant*, 236 Neb. 317, 461 N.W.2d 253 (1990), the State argues that the testimony is admissible as an excited utterance because the victim was visibly shaken and

distraught as she spoke with the officer. As in *Plant*, the crucial question in this case is whether the statements were made while the declarant was still under stress from the startling event. Again, "[t]he key requirement is that the statement be made without time for conscious reflection." *Id*. at 329, 461 N.W.2d at 264.

The record is unclear regarding the time lapse between the last sexual assault and the time the victim spoke to police officers. It is clear that there had been sufficient time for the victim to record her reactions in her diary. The diary entry was made approximately 1 week prior to June 30, 1990. There was a time lapse of over 6 hours from the time the victim awakened her aunt and mother until she spoke to Officer Cook. The victim here was 13 years of age, much older than the 4-year-old whose statements were at issue in *Plant*. Because there was ample time for conscious reflection on the part of the victim, the court erred in admitting Officer Cook's testimony.

Officer Cook was asked by the State if she believed the victim, and she answered that she did. A belated objection was then made and sustained by the court. The answer was ordered stricken from the record, and the jury was instructed to disregard it. This court has held that "it is totally improper for one witness to testify as to the credibility of another witness. The question of any witness' credibility is for the jury." *State v. Beermann*, 231 Neb. 380, 396, 436 N.W.2d 499, 509 (1989).

Smith claims that the trial court erred in overruling his hearsay objections to the testimony of Officer Thorson and the victim's mother as to details of the sexual assaults. The victim's testimony preceded that of the officer and of her mother. During the victim's cross-examination, it was implied, at least by innuendo, that the victim had falsified her story of sexual abuse. The testimony of Officer Thorson and of the victim's mother was relevant to the charges against the defendant and showed that the victim had made prior consistent statements. Subject to the balance found in rule 403 of the Nebraska Evidence Rules (Neb. Rev. Stat. § 27-403 (Reissue 1989)), admission of the victim's prior consistent statements was a matter within the discretion of the trial court. *State v. Johnson*, 220 Neb. 392, 370 N.W.2d 136 (1985). We find no abuse of

discretion by the trial court in admitting the victim's prior consistent statements to her mother and to Officer Thorson.

## MOTION FOR MISTRIAL

Smith asserts that by simply asking the series of questions concerning his sexual interests, the State committed error so prejudicial to him that it requires reversal of his conviction. We agree.

> "A mistrial is properly granted when an event occurs during the course of a trial which is of such a nature that its damaging effects cannot be removed by proper admonition or instruction to the jury and would thus result in preventing a fair trial. Egregiously prejudicial statements of counsel, the improper admission of prejudicial evidence, and the introduction to the jury of other incompetent matters are examples of occurrences which may constitute such events. . . . Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material."

*State v. Groves*, 239 Neb. 660, 673-74, 477 N.W.2d 789, 799 (1991).

When asked whether a phone call made to his wife was placed from a topless go-go bar, Smith objected to the relevancy of the question, asked for a mistrial, and asked for an instruction that the jury disregard the question. His objection and motion were overruled. The entire line of questioning by the State regarding Smith's sexual interests was improper, irrelevant, and highly prejudicial. The trial court should have granted Smith's motion for a mistrial.

In view of our holding, Smith's final assignment of error need not be discussed.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.