STATE OF NEBRASKA, APPELLEE, V. CHESTER N. DOAN, APPELLANT.

498 N.W.2d 804.

Filed February 2, 1993.    No. A-91-827.

J.S. Barrett for appellant.

Don Stenberg, Attorney General, and David T. Bydalek for appellee.

Sievers, Chief Judge, and Connolly and Wright, Judges.

Sievers, Chief Judge.

## INTRODUCTION

Chester N. Doan was convicted by a jury of sexual assault of a child, in violation of Neb. Rev. Stat. § 28-320.01 (Reissue 1989), and sentenced to 3 years' imprisonment. This appeal raises the following four issues: (1) the standard by which a trial court determines whether a witness qualifies as an expert, in this case a counselor of a sexually abused child; (2) the admissibility of expert testimony on behavior typically seen in child sexual abuse victims; (3) the extent to which a counselor can testify to what he or she has been told by a child; and (4) whether a counselor can comment on the credibility of a child-victim by testimony that the child's claim of abuse was "validated."

## FACTUAL SETTING

The child, A.K., was $4^{1/2}$ years old during the summer of 1990, and she resided with her parents, who both worked during the day on Tuesdays. On Tuesdays, A.K.'s care from 8 a.m. until approximately 10:45 a.m. was provided by her grandmother Claudia. Claudia would then take the child to A.K.'s great-grandmother Marie, who would care for A.K. from approximately 10:45 a.m. until 2:30 or 3 p.m., when Claudia would return for her. Doan resided with Marie as an untrained "male nurse" and errand runner, in addition to his job at a Holiday Inn in Omaha. However, during the summer of 1990, Doan was not working at the motel, as he had sustained an on-the-job injury in April.

On Tuesday, August 28, 1990, A.K. first claimed during a casual conversation with Claudia that she had been subjected to improper sexual contact by Doan. As they were preparing to go to Marie's, A.K. asked Claudia if Doan would be at her great-grandmother's apartment. Claudia answered that " 'he might be' " and asked whether A.K. enjoyed playing with Doan, to which A.K. responded, " 'Yes, but sometimes Chester pulls his pants down.' " A.K. further told Claudia that Doan had shown her " 'his front' " and that he sometimes put " 'his hand in my pants.' " Claudia called A.K.'s mother, who

came immediately and talked with A.K., who reported that Doan would "pull his pants down and rumble his private parts on her back, [and] touch her private parts with his fingers."

At trial, A.K. testified that Doan had pulled down her pants, touched her "private parts" with his hands, and touched her with his private parts. A.K. testified that this had occurred three times, all at her great-grandmother's, either in Marie's bedroom or in the kitchen.

Doan's testimony at trial was that he had not ever touched the child and that he was rarely inside the apartment when the child was there, except for at lunchtime. Marie testified that she was with or watching A.K. at all times and that it was simply impossible for Doan to have ever been alone with A.K.

The defense was supported by Marie's son, Gene, a part-time resident of this five-room, two-bedroom apartment. The son maintained a "home office" in one of the bedrooms. The son said that he took every Tuesday off from work during the summer of 1990, that he was at the apartment each Tuesday, and that A.K. and Doan were never alone. Marie's cleaning woman, who worked 1 to 4 p.m. every Tuesday during the summer until the end of July, testified that she never saw A.K. alone and that "Marie was always there with her." The cleaning woman also testified that Marie's son was also always there. Finally, the defense called Evelyn Kelley, a dance teacher near retirement, who was 2 months short of her 90th birthday at the time of trial. Kelley related that she had known Doan for 30 years and that he had worked for her for over 10 years during the 1960's and early 1970's at her dance studio. Kelley related that Doan had helped her teach numerous classes of 3- to 8-year-old children, and she described his conduct with these small children as "above reproach."

## THE COUNSELOR

The State called as its witness Patricia Blau, who first talked with A.K. on January 30, 1991, 5 months after A.K.'s initial report of sexual assault. Blau had received a bachelor's degree in psychology in 1984 from Fort Hays State University in Hays, Kansas, and a master's degree in counseling from the University of Nebraska at Omaha on an unspecified date. She had worked

for Systems Associates for 7 years (presumably since her graduation in 1984) and testified that she had been in school most of the time while she was working (allowing the inference that her master's degree was recently conferred). Blau's employer, Systems Associates, provided inpatient and outpatient counseling for individuals, groups, families, and married persons. With respect to her duties, Blau testified that she assesses the needs of people, devises a counseling treatment plan with the assistance of a supervising psychiatrist, and then proceeds with the process of treatment.

The balance of the evidence in the record as to Blau's qualifications is as follows:

Q. Do you subscribe to any professional journals that deal with child sexual abuse?

A. Our office does, yes.

Q. And do you keep up on the current state of the literature in the area of child sexual abuse?

A. Yes.

Q. What percentage of your time would you say you devote to child sexual abuse? In the last seven years what percentage of your time?

A. In the last seven years? In terms of child sexual abuse, probably I've had more experience with that in the last four years. My primary interest before was in suicidology, and then I expanded that out, so the last four years I've been pretty well focused on the sexual aspect of that. Probably 60 — 50 to 60 percent of my time and my case load deals with people that have been sexually abused, children that have been sexually abused.

. . . .

Q. Can you estimate the number of children you have talked to that have complained of being sexually abused?

A. Probably about 35 to 40.

Blau then testified to the characteristics that are typically seen in sexually abused children as well as the difference between adults and children with respect to perception and verbal skills when responding to questions. Over objection as a conclusion without proper foundation, she confirmed the prosecutor's inquiries as to whether it is not "unusual for a child

not to have reported an incident of sexual abuse by a friend immediately" and whether it is not "unusual for a child to not be visably [sic] upset when first reporting sexual abuse by a friend." Blau testified that she evaluates as to "whether or not I believe they've been abused or not." Blau testified over a hearsay objection about the history she had obtained from A.K. The trial court then granted a continuing objection to further testimony from Blau, on grounds of hearsay and insufficient foundation. After that continuing objection was granted, Blau testified further about the history from A.K. and A.K.'s physical appearance and reactions while recounting the alleged abuse, finally stating that she had received "validation" of the child's account of sexual abuse.

## ASSIGNMENT OF ERROR

Doan assigns the following as error: "The Trial Court erred in overruling the defendant-appellant's objection to the expert testimony," together with a claim of excessive sentence. From this assignment, Doan argues that Blau should not have been allowed to testify, as she was not qualified, and further that his objections to her testimony on grounds of hearsay and lack of foundation should have been sustained.

## QUALIFICATIONS OF COUNSELOR AS EXPERT

The standard for qualifying an expert and for our review of the trial court's decision to allow such testimony is found in *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991).

No exact standard is possible for fixing the qualifications of an expert or skilled witness. *Herman v. Lee*, 210 Neb. 563, 316 N.W.2d 56 (1982). An expert or skilled witness will be deemed qualified if, and only if, he or she possesses special skill or knowledge respecting the subject matter involved so superior to that of men in general as to make his or her formation of a judgment a fact of probative value. *Northern Nat. Gas Co. v. Beech Aircraft Corp.*, 202 Neb. 300, 275 N.W.2d 77 (1979); *Mathine v. Kansas-Nebraska Nat. Gas Co., Inc.*, 189 Neb. 247, 202 N.W.2d 191 (1972). A trial court's factual finding that a witness qualifies as an expert will be upheld

on appeal unless clearly erroneous.
*Brown*, 237 Neb. at 866, 468 N.W.2d at 113-14.

*Northern Nat. Gas Co. v. Beech Aircraft Corp.*, 202 Neb. 300, 275 N.W.2d 77 (1979), which *Brown* cites, refers to the trial court's discretion as "large discretion" when it determines whether qualifications have been established for an expert. *Northern Nat. Gas Co.*, 202 Neb. at 306, 275 N.W.2d at 81. Under this standard, we cannot say that the trial court was clearly wrong in allowing Blau to testify. By her education and work experience, she had knowledge superior to that of people in general, so that her opinions had probative value sufficient to allow her to testify. However, the scope of that testimony is not without limits.

We observe that the Nebraska Supreme Court in *State v. Roenfeldt*, 241 Neb. 30, 486 N.W.2d 197 (1992), quoted with approval from the Illinois Court of Appeals in *People v. Nelson*, 203 Ill. App. 3d 1038, 561 N.E.2d 439 (1990): " '[F]ew jurors have sufficient familiarity with child sexual abuse to understand the dynamics of a sexually abusive relationship,' and 'the behavior exhibited by sexually abused children is often contrary to what most adults would expect.' " *Roenfeldt*, 241 Neb. at 39, 486 N.W.2d at 204. In affirming the trial court's determination that Blau was qualified to testify as an expert, we are of the opinion that her qualifications, at least those elicited by the State, were quite limited, requiring caution in the scope of her testimony. Nonetheless, given the district court's broad discretion in the determination of whether an expert is qualified to testify, we cannot say that the district court was clearly wrong in finding her qualified.

## VALIDATION TESTIMONY BY COUNSELOR

We now turn to the issue which we have determined to be dispositive and which requires a reversal of Doan's conviction. Most jurisdictions allow an expert to testify about the profile of a child abuse victim or what is called Child Sexual Abuse Accommodation Syndrome (CSAAS), and indeed, such syndrome testimony was approved by the Nebraska Supreme Court in *Roenfeldt*. Accord, *State v. Newman*, 109 N.M. 263, 784 P.2d 1006 (N.M. App. 1989); *State v. R. W.*, 104 N.J. 14,

514 A.2d 1287 (1986). See, also, *State v. J.Q.*, 252 N.J. Super. 11, 31, 599 A.2d 172, 183 (1991) (asserting that limited use of CSAAS testimony has received "nearly universal judicial approval in other jurisdictions" and citing cases from 24 states in support of that proposition). The evidence of CSAAS is usually admitted under evidence code provisions similar or identical to Neb. Rev. Stat. § 27-702 (Reissue 1989) as "assist[ing] the trier of fact to understand the evidence."

The rationale is that CSAAS evidence is rehabilitative, as it assists the jury's understanding of the behavior of child abuse victims, which the ordinary juror would probably find inconsistent with the conclusion that abuse had occurred. The behaviors which experts have said are commonly observed in sexually abused children are secrecy, helplessness, accommodation, delayed and unconvincing disclosure, and recantation. See Roland Summit, *The Child Sexual Abuse Accommodation Syndrome*, 7 Child Abuse & Neglect 177 (1983). As said in *J.Q.*, such testimony is admissible not to prove abuse of the child, but to explain certain behaviors of the child and to rebut the implied or express defense assertion that the child is lying. The New Jersey Superior Court, appellate division, cogently reasoned that "[i]ts basic purpose is to dispel the idea that secrecy, belated disclosure and/or recantation have the same negative implications in a child abuse case as they would where an offense against an adult is concerned." *J.Q.*, 252 N.J. Super. at 28, 599 A.2d at 181. The purpose of the evidence is to explain the " 'superficially bizarre behavior by identifying its emotional antecedents [which] could help the jury better assess the witness's credibility.' " *Id*. at 29, 599 A.2d at 181 (quoting *State v. Middleton*, 294 Or. 427, 657 P.2d 1215 (1983)).

Blau gave testimony which, although not so labeled, would be considered as CSAAS or rehabilitative testimony, e.g., whether it is unusual for a child to not be upset when first reporting abuse or unusual for a child to not immediately report it. However, when the testimony goes beyond explaining the child's behavior by use of CSAAS testimony and asserts, directly or indirectly, that the child has in fact been abused or that the child is telling the truth, then many courts hold that

such evidence goes too far, and its admission constitutes reversible error.

The scholarly opinion of Judge Long holds as follows in *J.Q.*, 252 N.J. Super. at 43, 599 A.2d at 189:

> In light of the state of social science research and case law as of this writing, we hold that CSAAS evidence is generally reliable to explain secrecy, belated disclosure and recantation by a child sex abuse victim; that syndrome evidence including CSAAS is not reliable to prove that sex abuse, in fact, occurred; and that an expert social science witness has neither the legal authority nor the scientific qualifications to opine as to the truthfulness of the statement of another witness.

We believe that this succinctly and correctly states how such evidence should be treated in the State of Nebraska. There is substantial support for the New Jersey view. In *State v. Gokey*, 154 Vt. 129, 574 A.2d 766 (1990), the court held that a psychologist's expert testimony that an alleged victim of sexual abuse had in fact been abused by the defendant exceeded permissible bounds. In *Gokey*, the State sought to uphold the evidence as profile or syndrome evidence. In rejecting that claim, heavy reliance was placed upon a Nebraska Law Review article which exhaustively treats the subject. See John E.B. Myers et al., *Expert Testimony in Child Sexual Abuse Litigation*, 68 Neb. L. Rev. 1 (1989).

> Myers and colleagues warn of the special danger of the expert inferring the occurrence of sexual abuse from the presence of characteristics known as Child Sexual Abuse Accommodation Syndrome. According to these authors, the syndrome is not "a diagnostic device. The syndrome does not detect sexual abuse. Rather, it assumes the presence of abuse, and explains the child's reactions to it. . . . Thus, the accommodation syndrome is not probative of abuse." [Citation omitted.] More generally, these authors conclude: "At the present time, experts have not achieved consensus on the existence of a psychological syndrome that can detect child sexual abuse." [Citation omitted.] Limited reference to the syndrome may be appropriate, however: "The syndrome helps explain why many

sexually abused children delay reporting their abuse, and why many children recant allegations of abuse and deny that anything occurred. If use of the syndrome is confined to these rehabilitative functions, the confusion clears, and the accommodation syndrome serves a useful forensic function."

*Gokey*, 154 Vt. at 135-36, 574 A.2d at 769.

The Vermont court analyzed the matter under their version of § 27-702, identical to Nebraska's, holding:

Under V.R.E. 702, a qualified expert may offer "scientific, technical, or other specialized knowledge" if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." The expert here was qualified to testify only on her specialized knowledge of the effects of sexual abuse on children, and, at most, to give her opinion on whether this child fit the profile of a sexually abused child in certain respects. She was not qualified and was not possessed of "scientific, technical, or other specialized knowledge" pertaining to the credibility of this witness and the guilt or innocence of this defendant. These are matters, in our system of criminal law, that are reserved for the jury. [Citations omitted.] An expert was hardly required to "assist the trier of fact" in drawing inferences from the child's account of the abuse. Any lay person is adequate to the task. "[O]nce the emotional antecedents underlying the victim's behavior are explained, 'the jury needs nothing further from the expert.' "

*Gokey*, 154 Vt. at 139-40, 574 A.2d at 771.

In *State v. Catsam*, 148 Vt. 366, 534 A.2d 184 (1987), the court dealt with profile evidence in a child sexual abuse case, as well as evidence from a mental health clinician that children with posttraumatic stress disorder (PTSD) do not make up stories of sexual abuse and that the victim in the case suffered from PTSD. The profile evidence was not challenged on appeal, but the conclusion about truthfulness was challenged as an expert opinion on the credibility of the complaining witness which usurped the jury's function. The court found that the expert's testimony was objectionable:

When viewed as a whole, the testimony of Ms. Termini was tantamount to a direct comment that the complainant was telling the truth about the alleged sexual assault for which the defendant was charged. By testifying first that sufferers of PTSD generally do not fabricate claims of sexual abuse, and then that the complainant suffers from PTSD, her testimony left one clear and unmistakable inference to be drawn: the complainant would not fabricate this allegation. The fact that the expert does not testify directly to the ultimate conclusion does not ameliorate the difficulty with the opinion on credibility. Other courts have concluded, as do we, that expert testimony that child victims of sexual-abuse generally tend not to fabricate incidents of abuse is the equivalent of a direct comment on the credibility of the testifying complainant.

*Id.* at 370, 534 A.2d at 187-88.

The court in *Catsam* said that this type of evidence cannot come in under § 27-702, as it does not " 'assist the trier of fact to understand the evidence or to determine a fact in issue,' " because truthfulness is generally not a fact in issue and because such testimony tends to lend an " 'improper "aura of special reliability and trustworthiness" to the complainant's testimony.' " *Catsam*, 148 Vt. at 371, 534 A.2d at 188. In *State v. Myers*, 382 N.W.2d 91 (Iowa 1986), admission of expert testimony that children rarely lie about sexual abuse was reversible error, as "the opinion testimony crossed that 'fine but essential' line between an 'opinion which would be truly helpful to the jury and that which merely conveys a conclusion concerning defendant's legal guilt.' " *Id.* at 98 (quoting *State v. Horton*, 231 N.W.2d 36 (Iowa 1975)). In *State v. J.Q.*, 252 N.J. Super. 11, 599 A.2d 172 (1991), the court said that the most dangerous aspect of expert opinion testimony that the complainant is telling the truth is that the opinion testimony is scientifically unreliable, as there is no scientific foundation for this evaluation of credibility, because an expert is no better qualified than a lay person to assess witness credibility. The New Jersey court then recounts that 22 states have rejected the expert stamp of truthfulness on a complainant's account of

sexual abuse.

Although Nebraska has not ruled directly on validation by a therapist or counselor in a child sexual abuse case, the court in *State v. Smith*, 241 Neb. 311, 488 N.W.2d 33 (1992), considered a police officer's testimony that she believed the 13-year-old victim of sexual assault. The court held: " '[I]t is totally improper for one witness to testify as to the credibility of another witness. The question of any witness' credibility is for the jury.' " *Id*. at 319, 488 N.W.2d at 38 (quoting *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989)).

In *State v. Roenfeldt*, 241 Neb. 30, 486 N.W.2d 197 (1992), a counselor was allowed to testify to statements made by the victim, but for the purpose of establishing prior consistent statements under Neb. Rev. Stat. § 27-801(4)(a)(ii) (Reissue 1989), to rebut defendant's claim that the witness' trial testimony was fabrication. In addition, the court in *Roenfeldt* approved the admission of Dr. Barbara Sturgis' testimony (her field of expertise being unspecified in the opinion) as to the symptoms, behaviors, and feelings generally exhibited by children who have been sexually abused, even though the testimony was not premised upon an examination of the child-victim. The basis for the admission was said to be § 27-702, as the testimony was found to be relevant in assisting the trier of fact in deciding the issue in the case, whether the child had been sexually assaulted. Importantly, the court noted that Dr. Sturgis did not give an opinion as to whether the child "had indeed been sexually abused, nor did she attest to the likelihood of B.W.'s [the victim's] veracity or truthfulness." *Roenfeldt*, 241 Neb. at 39, 486 N.W.2d at 204.

We view *Roenfeldt* as pointing the way to the conclusion we reach. In *State v. Ammons*, 208 Neb. 812, 305 N.W.2d 812 (1981), the Supreme Court upheld the exclusion of a psychologist's testimony that eyewitness testimony tends to be inaccurate and unreliable. The court said that this expert testimony offered by the defendant would not aid the trier of fact in understanding the evidence or determining a fact in issue, the criteria for admissibility under § 27-702, and that therefore the district court had properly excluded the testimony.

The court later succinctly explained *Ammons* in *State v.*

*Trevino*, 230 Neb. 494, 432 N.W.2d 503 (1988), saying that it "stands for the proposition that it is not for an expert to suggest to the jury how a witness' testimony shall be weighed or evaluated." *Id.* at 517, 432 N.W.2d at 520. Although it speaks of eyewitness reliability, we find the reasoning of the Supreme Court in *Trevino* to be valuable guidance here:

> It is not the research behavioral social scientist who is in a position to assess a specific witness' reliability; the jury, which views the witness as an individual, is best able to collectively determine, on the basis of common human experience as yet unsurpassed by laboratory research, how to weigh what an individual witness has to say.

*Id.* at 518, 432 N.W.2d at 520.

We now turn to Blau's validation testimony:

> [T]he validation I got in terms of what actually happened was that she would talk to me about it. Her body would move. She kind of had this humping motion which is the linking of the verbal expression and the behavioral expression, and so this is how I get validation about what happens.
>
> . . . .
>
> [T]o validate the abuse, I asked her about things that were going on at home with her, if she was scared to be by herself or if she was having nightmares and those kinds of things, and she validated a lot of that.

The dictionary definition of validate is to "substantiate; confirm . . . . 2. to give legal force to; legalize. 3. to give official sanction, confirmation, or approval to . . . ." Webster's Encyclopedic Unabridged Dictionary of the English Language 1578 (1989). The testimony which we have quoted was a direct comment by one portrayed as an expert in child sexual abuse that A.K.'s account of abuse by Doan was believable and credible. Such testimony from Blau packs a persuasive punch because it puts the jury in the posture of "if the child sexual abuse expert believes A.K., who are we to conclude otherwise."

The objection to the validation testimony was on grounds of hearsay and foundation. The foundational objection should have been sustained. In *Clearwater Corp. v. City of Lincoln*, 202 Neb. 796, 277 N.W.2d 236 (1979), the Supreme Court held:

Expert testimony should not be received if it appears the witness is not in possession of such facts as will enable him to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture. The witness should not be allowed to express an opinion on an inadequate basis or in respect to facts not disclosed to the jury.

*Id*. at 804, 277 N.W.2d at 241.

When the proper foundation is not present to enable an expert to express a reasonably accurate conclusion, the testimony should not be received. See *Latek v. K Mart Corp.*, 224 Neb. 807, 401 N.W.2d 503 (1987). In the case at hand, there was no showing that Blau had the underlying expertise to validate A.K.'s account of sexual abuse, even if such testimony could be received, which it cannot. The objection on foundation should have been sustained.

We hold that in a prosecution for sexual assault of a child, an expert witness may not give testimony which directly or indirectly expresses an opinion that the child is believable, that the child is credible, or that the witness' account has been validated. Accordingly, we hold that it was error for the district court to admit Blau's testimony of validation.

We now address whether the admission of this testimony from Blau is reversible error. The law is well established that in a jury trial of a criminal case, whether error in the admission or exclusion of evidence reaches a constitutional dimension or not, an erroneous evidential ruling results in prejudice to the defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992). Harmless error exists when a review of the entire record shows that the erroneous admission of the evidence did not materially influence the jury or affect a substantial right of the defendant. *Id*. Thus, erroneously admitting evidence is harmless when such evidence is cumulative and other properly admitted evidence supports the finding by the jury. *State v. Cox*, 231 Neb. 495, 437 N.W.2d 134 (1989).

Consistent with those standards, we have reviewed the entire record in this case. In summary, this case involves allegations of

sexual contact occurring at the child's great-grandmother's apartment, where she was babysat for 3 to 4 hours each Tuesday during the summer of 1990. The great-grandmother and her son testified that they were present at all times and that the child was never alone with Doan. The cleaning woman, who worked in this small apartment on Tuesday afternoons for two-thirds of the summer, testified that the great-grandmother was always with the child. Doan denies any sexual contact whatsoever with the child and asserts that he was only in the apartment at lunchtime when the child was present. Therefore, we have an allegation of abuse which could only have occurred on certain days at a certain place, but three other adults who were present at the pertinent times and place provide support for Doan's denial.

The prosecution's case rests entirely upon A.K.'s account of abuse, and if it is not found credible by a jury, there is no other evidence upon which to convict Doan. Thus, the evidence cannot be said to be cumulative, since there was only A.K.'s testimony and Blau's validation of it. Given these circumstances, we cannot say that the erroneous admission of this evidence was harmless error beyond a reasonable doubt. The trial came down to a question of "Who do you believe?" The admission of expert testimony that the child's account of abuse had been validated was not harmless error.

We leave for another day or a higher court the matter of the extent to which the medical diagnosis and treatment exception to the hearsay rule, Neb. Rev. Stat. § 27-803(3) (Reissue 1989), allows a counselor or therapist such as Blau to testify to what the child-victim had told her some 5 months after the alleged assault.

Doan's conviction is reversed, and the matter is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.