STATE OF NEBRASKA, APPELLEE, V.
JEFFREY DEAN MYERS, APPELLANT.
726 N.W.2d 198

Filed December 26, 2006. No. A-06-114.

Joseph H. Murray, P.C., L.L.O., and Lucas L. Swartzendruber, of Germer, Murray & Johnson, for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

IRWIN, SIEVERS, and CARLSON, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Jeffrey Dean Myers was convicted in the district court for Webster County of five counts of first degree sexual assault, three counts of sexual assault of a child, seven counts of manufacturing child pornography, and five counts of possession of child pornography. Myers now appeals his convictions, and he asserts on appeal that the district court erred in allowing the State to present certain testimony concerning uncharged prior bad acts and in allowing, over Myers' objection, allegedly expert testimony concerning victims of sexual assault. We find the prior bad acts testimony was properly admitted to demonstrate that Myers' sexual contact with the victims when they were under the age of 14 was both intentional and for purposes of sexual gratification. We also find the alleged expert's testimony that was objected to had proper foundation and was not an improper statement about the credibility of the child victims. As such, we affirm.

## II. BACKGROUND

On September 21, 2005, Myers was charged in an amended information with six counts of first degree sexual assault, three counts of sexual assault of a child, eight counts of manufacturing child pornography, and five counts of possession of child pornography. Prior to trial, the district court severed the five counts of possession of child pornography and ordered a separate trial on those five counts.

Also prior to trial, the State filed a motion seeking an order of the district court allowing the State to adduce evidence of uncharged crimes, wrongs, or acts previously committed by Myers, pursuant to the provisions of Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 1995). The State indicated that the proffered evidence would "show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and/or absence of

mistake or accident." Pursuant to rule 404(3), the district court held a pretrial hearing for assessing the admissibility of the proffered evidence. The district court entered an order in which the court held, inter alia, that the State would be allowed to introduce rule 404(2) evidence concerning sexual conduct between Myers and J.K. when J.K. was 16 years of age and concerning sexual conduct between Myers and R.O. when R.O. was between 11 and 16 years of age. With respect to evidence concerning R.O., the court held that the State would be allowed to introduce evidence of sexual activities between Myers and R.O., "on the basis of Modus Operandi, Identity, and Intent," and to introduce evidence of a video Myers allegedly showed to R.O. depicting Myers and a boy R.O. estimated to be 13 or 14 years of age attempting to engage in sexual intercourse, "on the basis of Intent."

The record of the two separate trials noted above in this case consists of more than 1,250 pages of hearings, testimony, and arguments; more than 40 exhibits; and a transcript of more than 350 pages. We have reviewed the entire record, but we find it unnecessary to specifically recount the details of the testimony and exhibits upon which Myers was convicted of sexually penetrating and sexually contacting two children under the age of 14, manufacturing various child pornography concerning three children under the age of 18, and possessing various other child pornography. Instead, we summarize the evidence viewed in a light most favorable to the State as follows:

The victims in this case were R.S., born June 3, 1988; G.K., born July 19, 1988; and J.K., born March 30, 1987. Myers was born June 2, 1968. In the first trial, the State presented evidence concerning Myers' sexual involvement with the children occurring between September 2002 and May 2003, including penetration, contact, and manufacturing of child pornography. In the second trial, the State presented evidence concerning Myers' possession of various images of child pornography in June 2003.

R.S. was friends with Myers' son and spent time at Myers' house "[a]bout every day," including spending the night on "[a] lot" of occasions. On a number of occasions between September 2002 and May 2003, Myers performed oral sex on R.S., received oral sex from R.S., and masturbated R.S. Myers videotaped a number of the encounters and took Polaroid photographs of R.S.

while R.S. was naked. In exchange for the sexual encounters, Myers gave R.S. a Nintendo "Game Boy Advance" video game on one occasion and cash on other occasions. R.S. specifically denied ever engaging in anal sex with Myers.

G.K. was also friends with Myers' son and spent time at Myers' house "[a] few times a week," including spending the night on occasion. On a number of occasions between December 2002 and May 2003, Myers performed oral sex on G.K., engaged in anal sex with G.K., fondled G.K. and "manipulate[d]" G.K.'s penis, and engaged in mutual masturbation with G.K. Myers videotaped "quite a few" of the encounters and took Polaroid photographs of G.K. while G.K. was naked or while sexual activity was going on. In exchange for the sexual encounters, Myers gave G.K. cash.

J.K. was friends with R.S. and met Myers through R.S. and one of Myers' foster children. In spring 2003, R.S. told J.K. he "could make some movies for some money" with Myers, and Myers told J.K. he could "jack off in front of the camera and get fifty bucks or [he could] do stuff with [Myers] or somebody else and get more money." Myers videotaped J.K. masturbating on two occasions and performed oral sex on J.K. and received oral sex from J.K. on one other occasion. In exchange for the sexual encounters, Myers gave J.K. cash.

Myers objected to R.O.'s testimony as improper rule 404(2) evidence. The district court overruled the objection, but instructed the jury that R.O.'s testimony was "being allowed . . . only for the purpose of showing modus operandi, identity, and intent." R.O. was not acquainted with R.S., G.K., or J.K. R.O. met Myers when R.O. was 11 or 12 years of age and Myers was the manager of the apartment complex in which R.O. lived. On one occasion, Myers and R.O. "measured [their] penises." On a number of occasions over the next few years, R.O. performed anal sex on Myers and Myers engaged in oral sex with R.O. On one occasion when R.O. was 12 or 13 years of age, Myers took a photograph of R.O. masturbating. In exchange for the sexual encounters, Myers gave R.O. cash and other gifts, including cigarettes and a gym membership. Additionally, Myers once showed R.O. a video of "a nude young boy trying to sit on [Myers'] penis," and on a number of occasions while R.O. was

12 or 13 years of age, Myers attempted to arrange a sexual encounter between R.O. and Myers' wife.

During trial, the State also adduced testimony from an investigator, Charles Venditte. Venditte testified that he conducted six interviews in the course of investigating the State's case against Myers, including interviews of R.S., G.K., J.K., and R.O. During cross-examination, Myers' attorney established that during various interviews conducted by Venditte and various police officers, the children had not disclosed the same details about their sexual encounters with Myers. Venditte testified that the children all indicated "they did not tell the truth to begin with" because "they were afraid." On redirect examination, the State asked Venditte, without objection, the following question: "And you were aware that [the children] weren't being completely honest with you or hadn't been honest with the first interviewers; is this correct?" Venditte answered, without objection, "That's correct." When the State inquired why Venditte had held that belief, Myers' attorney imposed an objection on the basis of foundation, which objection was overruled. Venditte then provided the following response:

> It's been my experience that when you're dealing with child victims of sex crimes, especially they're going to be very hesitant to tell you what is going on, especially if their parents are with them when they're being interviewed. And the more they're interviewed, the more trust they have in the person doing the interview, realizing that there will be help available for them, whether it be in the form of counseling or whatever type of emotional support, and that's always important for the child victim to be aware of that. But it takes more than just one session to do that. And that's the way it played out in this case.

In the first trial, the jury returned verdicts of guilty on five counts of first degree sexual assault, finding that Myers had engaged in sexual penetration with R.S. on two occasions between September 2002 and May 2003 and with G.K. on three occasions between December 2002 and May 2003, all when R.S. and G.K. were less than 16 years of age and when Myers was 19 years of age or older; three counts of sexual assault of a child, finding that Myers had engaged in sexual contact with R.S. on one

occasion between September 2002 and May 2003 and with G.K. on two occasions between December 2002 and May 2003, all when R.S. and G.K. were 14 years of age or younger and Myers was at least 19 years of age or older; and seven counts of manufacturing child pornography, including one incident involving R.S. between September 2002 and May 2003, three incidents involving G.K. between December 2002 and May 2003, and three incidents involving J.K. in May 2003, all when R.S., G.K., and J.K. were under the age of 18 and Myers was 19 years of age or older. See Neb. Rev. Stat. §§ 28-319(1)(c) (Reissue 1995), 28-320.01 (Cum. Supp. 2004), and 28-1463.03 (Reissue 1995). The jury returned verdicts of not guilty on one count of first degree sexual assault concerning R.S. and one count of manufacturing child pornography concerning R.S.

In the second trial, the jury returned verdicts of guilty on five counts of possession of child pornography. We note that Myers' assertions of error on appeal concern only testimony received during his first trial and raise no issues concerning the second trial. As such, we conclude that Myers has raised no issues on appeal concerning his convictions on these five counts of possession of child pornography.

## III. ASSIGNMENTS OF ERROR

Myers asserts two errors on appeal. First, Myers asserts that the district court erred in allowing R.O.'s testimony. Second, Myers asserts that the district court erred in overruling Myers' objection during Venditte's testimony.

## IV. ANALYSIS

### 1. CONVICTIONS CHALLENGED

As noted above, Myers' assertions of error on appeal concern only testimony presented to the jury in the first trial, in which Myers was convicted of first degree sexual assault, sexual assault of a child, and manufacturing child pornography. Myers has raised no issues concerning the second trial, in which Myers was convicted of possession of child pornography. As such, we initially conclude that Myers' convictions and sentences imposed on the possession of child pornography charges are affirmed.

## 2. R.O.'s RULE 404 TESTIMONY

Myers first challenges the district court's allowing the State to present R.O.'s testimony of uncharged prior conduct between Myers and R.O. Myers argues on appeal that the testimony was not admissible for any proper purpose under rule 404 and that the testimony was unduly prejudicial and inadmissible under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995). Contrary to Myers' assertions, we find that the evidence was properly admissible to show intent and that the probative value of the evidence was not outweighed by its potential for unfair prejudice.

The basic rule concerning the admissibility of uncharged prior conduct is set forth in rule 404(2) as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(2) prohibits the admissibility of relevant evidence for the purpose of proving the character of a person in order to show that he or she acted in conformity therewith. Stated another way, rule 404(2) prohibits the admission of other bad acts evidence for the purpose of demonstrating a person's propensity to act in a certain manner. *State v. Sanchez*, 257 Neb. 291, 597 N.W.2d 361 (1999). The reason for the rule is that such evidence, despite its relevance, creates the risk of a decision by the trier of fact on an improper basis. *Id.* The exclusion of other crimes evidence offered to show a defendant's propensity protects the presumption of innocence and is deeply rooted in our jurisprudence. *Id.*

However, rule 404(2) is an inclusionary rule which permits the use of evidence of other crimes, wrongs, or acts if such is relevant for any purpose other than to show the defendant's propensity or disposition to commit the crime charged. *State v. Yager*, 236 Neb. 481, 461 N.W.2d 741 (1990). The purposes set forth in rule 404(2) are illustrative only and are not intended to be exhaustive or mutually exclusive. *Id.*

Evidence that is offered for a proper purpose is often referred to as having "special relevance" or "independent relevance," which means its relevance does not depend on its

tendency to show propensity. *State v. Sanchez, supra.* The Nebraska Supreme Court has explained the analytical framework for reviewing the admissibility of other crimes evidence under rule 404(2) as follows:

"[Nebraska's] rule 404(2) analysis considers whether the (1) evidence was relevant for some purpose other than to prove the character of a person to show that he or she acted in conformity therewith, (2) probative value of the evidence is substantially outweighed by its potential for unfair prejudice, and (3) trial court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was admitted."

*State v. Sanchez,* 257 Neb. at 306, 597 N.W.2d at 373.

### (a) Independent Relevance

Myers first asserts that R.O.'s testimony did not have independent relevance. In accordance with the Nebraska Supreme Court's directive in *State v. Sanchez, supra,* the record in the present case indicates that the district court specifically indicated R.O.'s testimony was being admitted to show Myers' (1) intent, (2) identity, and (3) modus operandi. Myers asserts that R.O.'s testimony did not have independent relevance for any of these purposes, because (1) intent was not an element of the sexual assault charges and R.O.'s testimony did not demonstrate Myers' intent to manufacture child pornography, (2) identity was not an issue in this case, and (3) the alleged sexual incidents between Myers and R.O. were not similar enough to the alleged sexual incidents between Myers and the victims in the present case to demonstrate a distinctive or signature modus operandi. Although the State fails to dispute Myers' assertion that intent was not an element of the sexual assault charges, we find intent is an element of sexual assault of a child and R.O.'s testimony had independent relevance to demonstrate that Myers' contact with the children in this case was intentional and for the purpose of sexual arousal or gratification. We therefore need not consider the admissibility of the testimony to show identity or modus operandi.

Myers was charged with three counts of sexual assault of a child under § 28-320.01. Contrary to Myers' assertion on

appeal, intent is an element of sexual assault of a child. "Sexual assault of a child under § 28-320.01(1) is described as 'subject[ing] another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older.'" *State v. Putz*, 266 Neb. 37, 51, 662 N.W.2d 606, 616 (2003). Neb. Rev. Stat. § 28-318(5) (Reissue 1995) defines "sexual contact" as follows:

> Sexual contact means the *intentional touching* of the victim's sexual or intimate parts or the *intentional touching* of the victim's clothing covering the immediate area of the victim's sexual or intimate parts. Sexual contact shall also mean the touching by the victim of the actor's sexual or intimate parts or the clothing covering the immediate area of the actor's sexual or intimate parts when such touching is *intentionally caused* by the actor. Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party.

(Emphasis supplied.) As such, sexual contact, for purposes of sexual assault of a child under § 28-320.01, includes the defendant's intentional touching of the victim's sexual parts or clothing covering the victim's sexual parts, as well as the defendant's intentionally causing the victim to touch the defendant's sexual parts or clothing covering the defendant's sexual parts.

The Nebraska Supreme Court recently recognized that intent is an element of sexual assault of a child. See *State v. Putz, supra.* In *State v. Putz, supra*, the court considered whether sexual assault of a child is a lesser-included offense of first degree sexual assault. In concluding that it is not, the court noted that unlike "'sexual contact'" for purposes of sexual assault of a child, "'sexual penetration'" for purposes of first degree sexual assault "includes no intent element." *Id.* at 51, 662 N.W.2d at 616. This difference in the elements of the two crimes, inter alia, prevents sexual assault of a child from being a lesser-included offense of first degree sexual assault. *State v. Putz, supra.* Compare *State v. Sanchez*, 257 Neb. 291, 597 N.W.2d 361 (1999) (intent was not element or fact of consequence where defendant charged only with first degree sexual assault).

The testimony of the child victims in this case indicated that Myers touched their sexual parts and caused them to touch his sexual parts. R.O.'s testimony—when he was less than 14 years of age and Myers was at least 19 years of age or older, Myers performed oral sex on R.O. and caused R.O. to perform oral sex on Myers—had independent relevance to establish that Myers' conduct with the child victims in this case was intentional and was for the purpose of sexual arousal or gratification. As such, the testimony was relevant for some purpose other than to prove Myers' character in order to show that he acted in conformity therewith.

### (b) Rule 403

Myers next asserts that R.O.'s testimony was unfairly prejudicial and that the prejudice outweighed the testimony's probative value.

 Rule 404(2) is subject to the overriding protection of rule 403. *State v. Yager*, 236 Neb. 481, 461 N.W.2d 741 (1990). Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. § 27-403; *State v. Yager, supra*. Most, if not all, items which one party to an action offers in evidence are calculated to be prejudicial to the opposing party; therefore, it is only unfair prejudice with which rule 403 is concerned. In the context of rule 403, such prejudice means a tendency to suggest a decision on an improper basis. *State v. Yager, supra*.

In *State v. Yager, supra*, the Supreme Court assessed whether evidence of the defendant's prior uncharged sexual contact with young males was rendered inadmissible under rule 403. The questioned evidence indicated that the defendant had sexually assaulted two young boys a number of years prior to the charged incidents, in which the defendant was alleged to have sexually assaulted an 8-year-old boy. The Supreme Court held that in view of the sexual nature of the crime charged, evidence of the defendant's other sexual contacts with young males was highly probative on the issue of the defendant's sexual arousal or gratification, as well as his intent. Further, the Supreme Court held

that although the evidence was prejudicial, the prejudice was not such as to suggest a decision on an improper basis.

Similarly, in the present case, Myers was charged with sexually assaulting two young males, R.S. and G.K. R.O.'s testimony was highly probative on the issues of Myers' intent and sexual arousal or gratification related to the sexual contact with R.S. and G.K. Although the evidence was necessarily prejudicial, the prejudice was not such as to suggest a decision on an improper basis. Further, even though the incidents involving R.O. occurred a number of years prior to the charged incidents involving R.S. and G.K., such remoteness goes to the weight to be given the evidence and does not render it irrelevant or inadmissible. See *State v. Yager, supra.* As such, the evidence was not inadmissible under rule 403.

### (c) Limiting Instruction

Myers does not take issue with the limiting instructions given by the district court. The record reveals that the district court gave a proper limiting instruction, both orally when R.O.'s testimony was elicited and in writing as part of the written jury instructions, specifically instructing the jury that the evidence was not being received, and could not be considered, to demonstrate Myers' character to show that he acted in conformity therewith. As such, the final part of the analytical framework was satisfied in this case.

### (d) Conclusion on Rule 404(2)

We conclude that R.O.'s testimony had independent relevance to show that Myers' sexual conduct with the child victims in this case was both intentional and for the purpose of sexual arousal or gratification, necessary elements of the three counts of sexual assault of a child with which Myers was charged. Further, the probative value of the testimony was not outweighed by a danger of unfair prejudice, and the district court gave proper and sufficient limiting instructions concerning the testimony. As such, we find no merit to Myers' assignment of error concerning R.O.'s testimony.

### 3. VENDITTE'S TESTIMONY

Myers next challenges the district court's overruling of Myers' objection during testimony of Venditte on behalf of the State.

Myers argues that Venditte presented expert testimony that improperly commented on the credibility of the child victims in this case. We find that the only objection made by Myers was a foundation objection to one specific question asked of Venditte and that such foundation objection was properly overruled.

Venditte testified that he was a former police officer with experience investigating domestic assault cases. At the time of trial, he was an investigator for the Nebraska Attorney General's office, and he investigated the present case and interviewed, inter alia, the child victims. During Myers' cross-examination of Venditte, he acknowledged that he was aware of various discrepancies between the victims' accounts provided to him and their accounts provided to other interviewers prior to Venditte's interviews.

On redirect examination, the State asked Venditte, without objection, the following question: "And you were aware that [the children] weren't being completely honest with you or hadn't been honest with the first interviewers; is this correct?" Venditte answered, without objection, "That's correct." When the State inquired why Venditte had held that belief, Myers' attorney imposed an objection on the basis of foundation, which objection was overruled. Venditte then provided the following response:

> It's been my experience that when you're dealing with child victims of sex crimes, especially they're going to be very hesitant to tell you what is going on, especially if their parents are with them when they're being interviewed. And the more they're interviewed, the more trust they have in the person doing the interview, realizing that there will be help available for them, whether it be in the form of counseling or whatever type of emotional support, and that's always important for the child victim to be aware of that. But it takes more than just one session to do that. And that's the way it played out in this case.

Myers asserts that his objection should have been sustained and that Venditte's testimony should have been disallowed, because it constituted an improper opinion about the credibility of the witnesses. Myers points us to the Nebraska Supreme Court's opinion in *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989), and this court's opinion in *State v. Doan*, 1 Neb. App.

484, 498 N.W.2d 804 (1993), in support. We do not find either case to indicate that the specific testimony provided by Venditte was inadmissible.

In *State v. Beermann, supra,* the State's expert witness, a police officer, was asked whether, in his opinion, the complaining victim had been sexually abused. The witness answered by indicating that he did believe the complaining witness had been sexually abused. The Supreme Court first held that the officer's testimony was significantly different at trial than at the preliminary hearing, prejudicing the defendant's ability to prepare a meaningful defense. Additionally, the court held that the officer's testimony could be construed as stating that the complaining witness' testimony was true and that the officer's testimony was therefore an improper statement concerning the credibility of another witness.

In *State v. Doan, supra,* the State's expert witness, a counselor with a bachelor's degree in psychology, provided testimony which this court considered as Child Sexual Abuse Accommodation Syndrome (CSAAS) or rehabilitative testimony, e.g., testimony concerning whether it is unusual for a child to not be upset when first reporting abuse or unusual for a child to not immediately report it. In addition to testifying about the fact that complaining witnesses who are children often act counterintuitively when reporting abuse either by delaying reporting or by not appearing visibly upset when reporting, the counselor specifically testified that she had received " 'validation' " of the complaining witness' account of sexual abuse. 1 Neb. App. at 488, 498 N.W.2d at 807. This court recognized other jurisdictions' holdings that CSAAS testimony is admissible but that when the testimony goes beyond explaining the child's behavior and asserts, directly or indirectly, that the child was in fact abused or is telling the truth, the evidence goes too far and its admission constitutes reversible error. This court thus held that the counselor's testimony about receiving "validation" of the complaining witness' account of sexual assault was inadmissible.

In the present case, Myers did not object when Venditte was asked if he was "aware" that the child victims had not been entirely truthful during earlier interviews. The only objection came to the question about why he believed that. The testimony which

was provided over Myers' foundation objection was only that, in Venditte's experience, child victims of sexual assault are hesitant to provide details until they have developed some level of trust with the interviewer, which usually takes more than one interview. We conclude that Venditte's testimony was limited specifically to his own experience, was consistent with his testimony that he had experience interviewing child victims of abuse, and was permissible testimony about how child victims of sexual assault act when being interviewed about the details of their abuse. Venditte's testimony was not a statement that he believed the child victims had, in fact, been sexually abused by Myers and was not a statement that he believed the child victims or that he received any kind of "validation" of the child victims' allegations of sexual assault. Compare, *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989); *State v. Doan*, 1 Neb. App. 484, 498 N.W.2d 804 (1993). As such, we find no merit to Myers' assignment of error concerning Venditte's testimony.

## V. CONCLUSION

We find no merit to Myer's assignments of error. R.O.'s testimony about uncharged prior sexual abuse by Myers was admissible to demonstrate that Myers' contact with the child victims in this case was both intentional and for the purpose of sexual arousal or gratification, was not unfairly prejudicial, and was the subject of proper limiting instructions. Venditte's testimony that was objected to had proper foundation and was not an improper statement about the credibility of the child victims. Accordingly, we affirm Myers' convictions and sentences on five counts of first degree sexual assault, three counts of sexual assault of a child, and seven counts of manufacturing child pornography. In addition, Myers has not challenged his convictions and sentences on the five counts of possession of child pornography, which we also affirm.

AFFIRMED.