Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/25/2021 08:08 AM CDT

State of Nebraska, appellee, v.
John J. Howard, appellant.
___ N.W.2d ___

Filed May 18, 2021.    No. A-20-446.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.
2. **Postconviction: Proof.** Under the postconviction statutes, a court is not obligated to hold an evidentiary hearing if the files and records of the case affirmatively show that the prisoner is entitled to no relief.
3. **Postconviction.** The district court has discretion to adopt reasonable procedures for determining what the motion and the files and records show, and whether the defendant has raised any substantial issues, before granting a full evidentiary hearing on a postconviction motion.
4. **Postconviction: Appeal and Error.** An appellate court examines the procedures used by the district court to determine whether to grant an evidentiary hearing for abuse of discretion, which exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.
5. **Postconviction: Effectiveness of Counsel: Claims: Appeal and Error.** When an appellate court finds, on direct appeal, that the record is not sufficient to resolve a claim of ineffective assistance, it should not be misunderstood as a finding that the claim will necessarily require an evidentiary hearing if raised in a motion for postconviction relief, because that determination is governed by an entirely different standard.
6. **Postconviction: Effectiveness of Counsel: Records: Claims: Appeal and Error.** Just because an appellate court finds the record on direct appeal is insufficient to resolve a claim of ineffective assistance, it

does not mean that a postconviction court will necessarily be precluded from later finding the existing record affirmatively refutes the same claim.

7. **Postconviction: Constitutional Law: Judgments.** Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.

8. **Postconviction: Constitutional Law: Proof.** In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.

9. ____: ____: ____. A trial court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.

10. **Postconviction: Proof.** If a postconviction motion alleges only conclusions of fact or law, or if the records and files in a case affirmatively show the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.

11. ____: ____. In a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief.

12. **Postconviction: Effectiveness of Counsel: Proof.** In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.

13. **Effectiveness of Counsel: Proof.** To establish the prejudice prong of a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

14. **Effectiveness of Counsel.** As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument.

Appeal from the District Court for Douglas County: Thomas A. Otepka, Judge. Affirmed.

Kenneth Jacobs, of Jacobs Alexander Law, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

Moore, Riedmann, and Bishop, Judges.

Riedmann, Judge.

## INTRODUCTION

John J. Howard appeals the order of the district court for Douglas County which denied his verified motion for postconviction relief without holding an evidentiary hearing. He challenges the procedure the court followed prior to ruling on his motion and the decision to deny him an evidentiary hearing. We affirm.

## BACKGROUND

Howard was charged with first degree sexual assault, sexual assault of a child, and first degree sexual assault of a child. The charges were based on allegations made by two of his daughters, M.H. and S.H., ages 22 and 16 respectively at the time of trial. Both daughters claimed that when they were around the ages of 4 or 5, Howard would digitally penetrate them when giving them baths. S.H. also described incidents, prior to the time she was in third grade, where Howard would force her to perform oral sex on him and would touch her vagina or force her to touch his penis.

The matter proceeded to a jury trial, and after the close of evidence and deliberations, the jury found Howard guilty of all three charges. He was sentenced to a total of 77 to 113 years' imprisonment.

Howard appealed to this court. We affirmed his convictions and sentences on direct appeal but found that the record was

insufficient to address several of his ineffective assistance of counsel claims. See *State v. Howard*, 26 Neb. App. 628, 921 N.W.2d 869 (2018). The Nebraska Supreme Court denied Howard's petition for further review, and the mandate issued in March 2019.

On February 27, 2020, Howard filed a verified motion for postconviction relief, which asserted several claims of ineffective assistance of counsel. Specifically, he claimed that his trial counsel was ineffective in failing to timely move for a mistrial during his ex-wife's testimony, failing to cross-examine M.H. as to whether she immediately reported to her mother inappropriate touching by her grandfather, failing to call Dr. Kirk Newring as an expert witness at trial, and failing to properly investigate and present evidence in 16 enumerated respects. He additionally alleged that his appellate counsel was ineffective in failing to assign as error on direct appeal his trial counsel's failure to object during the testimony of two of the State's witnesses, a forensic interviewer and S.H.'s counselor.

The district court directed the State to respond to the motion, but it did not do so. In a subsequent written order, the court denied postconviction relief without holding an evidentiary hearing. Howard appeals.

## ASSIGNMENTS OF ERROR

Howard assigns that the district court erred in (1) failing to hold a "records" hearing or identify the files and records upon which it relied and (2) denying his motion for postconviction relief without an evidentiary hearing.

## STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018).

## ANALYSIS

*Failure to Hold Records Hearing.*

Howard first challenges the procedure the district court followed in this case, asserting that the district court abused its discretion in failing to hold a records hearing. We disagree.

[2-4] Under the postconviction statutes, a court is not obligated to hold an evidentiary hearing if the files and records of the case affirmatively show that the prisoner is entitled to no relief. *State v. Lee*, 282 Neb. 652, 807 N.W.2d 96 (2011). And the district court has discretion to adopt reasonable procedures for determining what the motion and the files and records show, and whether the defendant has raised any substantial issues, before granting a full evidentiary hearing. *Id*. We examine these procedures for abuse of discretion, which exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id*.

Howard relies upon *State v. Glover*, 276 Neb. 622, 756 N.W.2d 157 (2008), to support his argument in the present case. In *Glover*, the defendant filed a motion for postconviction relief alleging ineffective assistance of counsel. The State filed a motion asking the court to deny relief without conducting an evidentiary hearing. The trial court held a hearing on the State's motion at which it received into evidence a copy of trial counsel's deposition which had been taken after the postconviction motion was filed. The court then relied on the deposition to conclude that the files and records affirmatively showed the defendant was not entitled to relief.

On appeal, the Supreme Court noted that trial courts have discretion to adopt reasonable procedures for determining what files and records it should review before granting a full evidentiary hearing and observed that in general, it has allowed courts to (1) order the State to respond to a prisoner's postconviction motion or to show cause why an evidentiary hearing should not be held, (2) allow the State to file a motion to deny an

evidentiary hearing, and (3) hold a records hearing for receiving into evidence the relevant files and records that the court may need to review in considering whether to grant or deny an evidentiary hearing. *Id.* The Supreme Court also cited its prior holdings that if a court does not receive into evidence the relevant case records and files at a records hearing, the court should certify and include in the transcript the files and records it considered in denying relief. *Id.*

The Supreme Court pointed out that in previous cases, the files and records that the district court received at the records hearings were limited to the prisoner's trial files and records. *Id*. Thus, the "files and records of the case," as the term is used in Neb. Rev. Stat. § 29-3001(2) (Reissue 2016), upon which a postconviction court should rely in denying an evidentiary hearing, are the files and records existing before the postconviction motion is filed. *State v. Glover, supra*. The Supreme Court therefore disapproved of the procedure used by the district court.

We do not find that *State v. Glover, supra*, mandates that a trial court hold a records hearing before ruling on a postconviction motion. The issue in *Glover* was if a trial court does hold a records hearing, whether it could receive new evidence at that hearing. And the Supreme Court determined that it could not, reasoning that "receiving new evidence at a records hearing would create chaos," because either the State or the prisoner could be unprepared to respond to new evidence, and that unpreparedness could result in unnecessary due process challenges from prisoners. *State v. Glover*, 276 Neb. at 629, 756 N.W.2d at 163. Nor does *Glover* require a trial court to elect one of the three procedural options the Supreme Court has approved in the past. Rather, it reinforces that a trial court is allowed discretion to adopt its own reasonable procedures for determining what files and records it should review, so long as that discretion comports with the specific procedural rules mandated by § 29-3001. The question in the present case is

whether the district court's procedure was reasonable or constituted an abuse of discretion.

In *State v. Lee*, 282 Neb. 652, 807 N.W.2d 96 (2011), the trial court denied an evidentiary hearing on a postconviction motion because it found that the defendant had asked for continuances, which tolled the time in which the State had to commence the trial. Because of this tolling, the court concluded that the State had not violated the defendant's right to a speedy trial and denied postconviction relief without an evidentiary hearing. On appeal, however, the Supreme Court observed that the files and records of the case did not show when the court granted the continuances or for how long the matters were continued. In other words, the files and records of the case did not show that the defendant actually moved for continuances and thus did not show that the State did not violate his speedy trial right. Accordingly, because the records did not affirmatively show that the defendant was not entitled to relief, the Supreme Court held that the trial court should have certified and included in the transcript any files or records, including any documents related to the supposed continuances, that it considered in denying an evidentiary hearing.

The reason for this requirement is "obvious." *Id*. at 665, 807 N.W.2d at 107. When a trial court denies an evidentiary hearing based upon documents it does not certify and include in the transcript, it effectively denies the movant a meaningful appeal, leaving the appellate court with only the option of taking the trial court's word for the matter, which it will not do. See *id.*

Thereafter, in *State v. Torres*, 300 Neb. 694, 915 N.W.2d 596 (2018), the defendant argued that the trial court violated *State v. Glover*, 276 Neb. 622, 756 N.W.2d 157 (2008), because it did not hold a records hearing or otherwise identify the files and records on which it relied in denying postconviction relief without an evidentiary hearing. The Supreme Court in *Torres* observed that the trial court's order made express findings regarding the history of the defendant's case and based

those findings on its review of the files and records in the case. The court's order also made specific findings regarding various dates relevant to its conclusion that the motion was barred by the 1-year statute of limitations.

The Supreme Court in *Torres* found that it was plainly evident from the trial court's order which files and records it relied upon, and all such records existed before the motion was filed and were contained in the transcript. It therefore found no merit to the defendant's assignment of error, determining that there was no need to remand the matter for a formal records hearing under *Glover*.

Considering the rationale from the above-cited authority, we find no abuse of discretion in the procedure the district court followed in the present case. Unlike in *State v. Glover, supra*, the files and records upon which the district court relied existed before Howard filed his motion for postconviction relief and were available to and considered by this court on direct appeal. Contrary to *State v. Lee*, 282 Neb. 652, 807 N.W.2d 96 (2011), the files and records the district court cited are part of the record before us, so we are able to conduct a meaningful review of the court's decision. And as in *State v. Torres, supra*, it is plainly evident from the district court's order what files and records it considered. The court cited to various parts of the bill of exceptions and to the motion itself in reaching its decision. We therefore conclude that the district court's procedure did not unfairly deprive Howard of a substantial right or deny a just result.

[5] We recognize, as Howard points out, that we determined on direct appeal that the record was insufficient to address his ineffective assistance of counsel claims. The Supreme Court, however, recently emphasized two important points about a conclusion that the record on direct appeal is insufficient to resolve certain claims. See *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019). First, when an appellate court finds, on direct appeal, that the record is not sufficient to resolve a claim of ineffective assistance, it should not be misunderstood as

a finding that the claim will necessarily require an evidentiary hearing if raised in a motion for postconviction relief, because that determination is governed by an entirely different standard. *Id*.

[6] Second, just because an appellate court finds the record on direct appeal is insufficient to resolve a claim of ineffective assistance, it does not mean that a postconviction court will necessarily be precluded from later finding the existing record affirmatively refutes the same claim. *Id*. Several factors make this so. Sometimes, critical portions of the existing trial record are not included in the appellate record, but are later available to the postconviction court. *Id*. Additionally, because a defendant on direct appeal is not required to make specific allegations of prejudice, the appellate court often has an incomplete understanding of how a defendant claims to have been prejudiced by certain deficient conduct. *Id*. Consequently, a finding on direct appeal that the existing record is insufficient to determine a claim of deficient conduct does not speak to whether the existing record will be sufficient to affirmatively refute prejudice once the claim is alleged on postconviction. *Id*. Based on the foregoing, we conclude that the record is sufficient to identify the files and records the district court considered, which are included in our record, and we are able to conduct a meaningful review of the court's decision. Accordingly, the district court did not abuse its discretion in the procedure it followed.

*Failure to Hold Evidentiary Hearing.*

[7,8] Howard claims that the district court erred in denying his motion for postconviction relief without an evidentiary hearing. Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018). In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his

or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Stricklin, supra*.

[9-11] A trial court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution. *State v. Stricklin, supra*. If a postconviction motion alleges only conclusions of fact or law, or if the records and files in a case affirmatively show the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing. *Id*. Thus, in a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief. *Id*.

[12,13] All of the claims Howard raised in his motion for postconviction relief allege ineffective assistance of counsel. In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018). Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id*. To establish the prejudice prong of a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id*.

Howard asserts several claims regarding his trial counsel. He first alleges that his trial counsel was ineffective in failing to timely move for a mistrial during his ex-wife's testimony. As we outlined on direct appeal, at some point after S.H. disclosed the sexual abuse, she alleged that during one particular incident, Howard made her wear a "sports bra" belonging to her mother, who by the time of trial was Howard's ex-wife. During a deposition of Howard's ex-wife, she apparently denied owning any sports bras. At trial, however, during cross-examination, she testified that she did own a sports bra. She admitted that during her deposition she had denied owning one, but said that she subsequently discovered that she did, in fact, have one. During redirect, she said that she raised the issue with the county attorney before trial because she realized that she had not given an honest answer in her deposition.

Howard did not object when his ex-wife was testifying regarding the sports bra issue, nor did he immediately move for a mistrial. After her testimony concluded, the State called one additional witness to testify before it rested. Howard then began presenting his defense by calling his first witness to testify. After that witness' testimony concluded, Howard moved for a mistrial based on his ex-wife's testimony. He claimed that the State should have disclosed the inaccuracy of her deposition testimony prior to trial. The district court denied the motion for mistrial.

Howard argued to the district court and on direct appeal that the State's failure to disclose the change in his ex-wife's testimony violated his rights under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), such that the court would have granted a mistrial had counsel moved timely. In *Brady*, the U.S. Supreme Court held that the prosecution has a duty to disclose all favorable evidence to a criminal defendant prior to trial. Favorable evidence includes both exculpatory and impeachment evidence. See, *United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985); *State v. Clifton*, 296 Neb. 135, 892 N.W.2d 112 (2017). Where the prosecution

delays disclosure of evidence, but the evidence is nonetheless disclosed during trial, however, *Brady* is not violated. *State v. Clifton, supra*.

In the present case, the change in Howard's ex-wife's testimony was revealed at trial. Therefore, to the extent her admission that she owned a sports bra could be classified as exculpatory evidence, the State's failure to disclose it prior to trial does not violate *Brady v. Maryland, supra*.

[14] We also note that when trial counsel did move for a mistrial, albeit untimely, the basis for his motion was a *Brady* violation, but the district court overruled the motion. Accordingly, even if trial counsel had timely moved for a mistrial, the motion would not have been successful because there was no *Brady* violation in this regard. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017). Therefore, Howard was not prejudiced by the failure of trial counsel to timely move for a mistrial during his ex-wife's testimony. As such, Howard was not entitled to an evidentiary hearing on this claim.

Howard additionally asserts that he should have received an evidentiary hearing on his claim that trial counsel was ineffective in failing to cross-examine M.H. as to whether she immediately reported to her mother inappropriate touching by her grandfather. Howard notes that M.H. testified at trial that she never told her mother that Howard sexually assaulted her because she had a strained relationship with her mother, but Howard claims that M.H.'s mother testified at a pretrial deposition that M.H. did report to her an incident of inappropriate touching by M.H.'s grandfather. Thus, Howard argues that he was prejudiced by trial counsel's failure to cross-examine M.H. on this issue because it left M.H.'s credibility "unchallenged." Brief for appellant at 17.

Contrary to this argument, the record establishes that trial counsel thoroughly cross-examined M.H. and challenged her credibility on various issues. As the district court observed,

the cross-examination of M.H. spans 35 pages in the bill of exceptions, and trial counsel questioned M.H. consistent with the defense theory that M.H. and S.H. fabricated the allegations. Trial counsel questioned M.H. about talking to the police detective, the child advocacy center, her counselor, her aunt, and S.H.; her desire at the time she disclosed the abuse that her mother divorce Howard; her close relationship with S.H. at that time and whether she was able to "manipulate" S.H.; discussing the abuse with S.H. before talking to the police detective; and her failure to disclose inappropriate touching by Howard in the bathtub until after she learned that S.H. had disclosed similar abuse. He additionally attempted to impeach M.H.'s trial testimony at several points using both her deposition testimony and her interviews with the police detective.

Accordingly, we conclude that Howard cannot establish prejudice from the failure of trial counsel to question M.H. regarding an additional matter that could have potentially impacted her credibility. To prove prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018). A reasonable probability is a probability sufficient to undermine confidence in the outcome. See *id*. Trial counsel thoroughly challenged M.H.'s credibility on cross-examination, and we cannot find that failing to question her on one additional issue is sufficient to undermine confidence in the outcome of trial. See *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018) (defendant's allegation of failure to cross-examine witness on minor credibility issue is not sufficient to demonstrate either deficient performance or resulting prejudice). See, also, *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016) (when record shows State's witnesses were thoroughly cross-examined consistent with defense theory, there was meaningful adversarial testing of prosecution's case). The district court therefore did not err in denying an evidentiary hearing on this claim.

Howard next contends that he was entitled to an evidentiary hearing on his claim that trial counsel was ineffective in failing to call Newring as a witness at trial. According to Howard, he hired Newring to evaluate the case and testify in his defense. Newring's name was included on Howard's witness list filed with the district court prior to trial. The State filed a motion in limine to exclude Newring's testimony, and the district court reserved ruling on the motion. Newring was not called to testify at trial.

In his motion for postconviction relief, Howard asserted that Newring reviewed materials pertinent to the case and was prepared to testify that there were several potential "biasing factors" present in the statements made by M.H. and S.H. Howard alleged that these "'biasing factors,' in general, tend to negatively impact the reliability of [the] statements and testimony by M.H. and S.H. (and anyone else claiming to be a victim of sexual abuse)." He argues that Newring's testimony would have assisted the jury in evaluating the nature of the statements M.H. and S.H. gave and how they were obtained through certain interviewing methods.

The State asserts that even if trial counsel had called Newring as a witness at trial, his testimony in this regard would have been inadmissible, citing *State v. Doan*, 1 Neb. App. 484, 498 N.W.2d 804 (1993). In *Doan*, this court held that in a prosecution for sexual assault of a child, an expert witness may not give testimony which directly or indirectly expresses an opinion that the child is believable, that the child is credible, or that the witness' account has been validated.

In reaching this conclusion, we cited a decision of the Vermont Supreme Court where it found objectionable the testimony of an expert witness that sufferers of post-traumatic stress disorder generally do not fabricate claims of sexual abuse and that the complainant suffered from post-traumatic stress disorder. See *State v. Catsam*, 148 Vt. 366, 534 A.2d 184 (1987). The Vermont court explained that this testimony

> left one clear and unmistakable inference to be drawn: the complainant would not fabricate this allegation. The

> fact that the expert does not testify directly to the ultimate conclusion does not ameliorate the difficulty with the opinion on credibility. Other courts have concluded, as do we, that expert testimony that child victims of sexual abuse generally tend not to fabricate incidents of abuse is the equivalent of a direct comment on the credibility of the testifying complainant.

*Id*. at 370, 534 A.2d at 187-88.

We addressed a similar issue in *State v. Craven*, 18 Neb. App. 633, 790 N.W.2d 225 (2010), where the defendant alleged on appeal that the testimony of his expert witness should have been admitted in order for the witness to testify as to the reliability of the child victim's interview at a child advocacy center. Specifically, the witness would have opined that the reliability of the interview of the victim was uncertain. On appeal, we characterized the defendant's argument that such testimony would have assisted the jury in understanding the good and bad portions of the interview with the victim as "essentially an attempt to assist the jury in determining the weight of that evidence and the credibility of [the victim]." *Id*. at 650, 790 N.W.2d at 238. We therefore found that the testimony was inadmissible and that the trial court had not abused its discretion in excluding it.

Likewise, here, Howard alleges that Newring's testimony would have assisted the jury in evaluating the nature of the statements of M.H. and S.H. or, in other words, it would have assisted the jury in assessing the credibility of the victims. According to Howard, Newring would have testified that "biasing factors" tend to negatively impact the reliability of statements and testimony and that there were "biasing factors" present in the interviews of M.H. and S.H. As in *State v. Catsam, supra*, there is only one inference that could be drawn from such testimony, and that is that the statements of M.H. and S.H. were unreliable. This testimony is not admissible. Therefore, trial counsel was not ineffective in failing to call Newring as a witness at trial in order to elicit such testimony;

thus, Howard was not entitled to an evidentiary hearing on this claim.

In addition to testimony related to "biasing factors," Howard's postconviction motion asserted that Newring was also prepared to offer testimony on the differences between adults and adolescents regarding brain development and susceptibility to peer pressure as well as cognitive dissonance, particularly as it relates to allegations of abuse. He does not argue this issue in his brief on appeal, however, and we therefore do not address it. See *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

In his final claim regarding trial counsel, Howard alleged that his counsel failed to properly investigate and present evidence favorable to his defense. He lists 16 different ways in which he alleged trial counsel's performance in this respect was deficient and asserts that he was prejudiced because had trial counsel elicited the 16 pieces of evidence he enumerates, there is a reasonable probability that the outcome of trial would have been different because this evidence supported the defense theory that M.H. and S.H. falsified the allegations.

We have reviewed each of these claims and agree with the district court that these allegations did not necessitate an evidentiary hearing. Although Howard states that the evidence not presented would have supported his theory that M.H. and S.H. fabricated their allegations for a number of reasons, including because they wanted Howard out of the family, the record indicates that defense counsel presented similar evidence at trial. For example, Howard asserts that counsel was ineffective for failing to present testimony from his ex-wife that she never witnessed any sexual abuse; however, M.H. testified that her mother denied knowing about the abuse. Likewise, he claims that S.H.'s counselor should have been cross-examined about her "prepping" of S.H. for trial; however, S.H. testified that her counselor prepared her to testify.

Additionally, Howard takes issue with counsel failing to cross-examine M.H. regarding specific "blog" posts she wrote, but counsel did cross-examine her about several other postings. Our review of the trial record does not support a finding that Howard could show prejudice as a result of the proposed evidence not being offered.

In addition to asserting claims of ineffective assistance of trial counsel, Howard alleges that his appellate counsel performed deficiently in failing to assign two errors on direct appeal. When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the *Strickland* test. *State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018). See *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. *State v. Allen, supra*. Much like claims of ineffective assistance of trial counsel, the defendant must show that *but for* counsel's failure to raise the claim, there is a reasonable probability that the outcome would have been different. *Id*.

Howard first asserts that appellate counsel was ineffective in failing to assign as error trial counsel's failure to object during the testimony of the State's expert witness, a forensic interviewer. He claims that her testimony regarding the terms "active disclosure" and "nonactive disclosure" constituted improper expert testimony in violation of *State v. Doan*, 1 Neb. App. 484, 498 N.W.2d 804 (1993), because she improperly vouched for S.H.'s credibility, expressed an opinion that she was believable, and validated her allegations. We disagree.

This witness was a forensic interviewer at a child advocacy center in Omaha, Nebraska, who interviewed S.H. on two occasions. She explained that she was trained to interview children and help them describe their experiences and observations

in a neutral way. She discussed her experience in interviewing children and the differences in the way children respond, in that some are ready to talk about things that have happened and some are not. She explained that when a child is ready and willing to talk, that kind of disclosure is referred to as "active disclosure." More specifically, active disclosure means the child has come to the advocacy center because he or she has already disclosed the abuse to someone, so the child is ready to talk about it and wants to tell what happened.

To the contrary, nonactive disclosure occurs when the child is at the advocacy center because someone else has identified the child as a victim or the child has been acting out and the interviewer is trying to identify the reason for and source of the child's behaviors. With a nonactive disclosure, the child has not told anyone anything, is very closed off, and is unwilling to talk about any uncomfortable topics. Over time, a child who began in a stage of nonactive disclosure can progress to a stage of active disclosure.

The interviewer explained that during her first interview with S.H., S.H. was closed off and reluctant to talk. Thus, she characterized S.H. as being in the nonactive stage of disclosure at that time. The second time she interviewed S.H., S.H.'s demeanor was "completely different" in that she was much more open, talkative, and responsive to questions. Therefore, according to the interviewer, S.H. was in the active stage of disclosure during her second interview.

As discussed above, *State v. Doan, supra*, prohibits an expert witness from offering testimony that directly or indirectly expresses an opinion that the child is believable, that the child is credible, or that the witness' account has been validated. Here, the interviewer did not opine on the reliability of the information a witness provided during active or nonactive disclosure; rather, the distinction between the two stages is whether the child is open, responsive, and willing to provide any information. The reliability of the information provided is of no consequence. Thus, the interviewer's testimony regarding S.H., specifically, described only her demeanor during

the interviews as to whether she was open to offering information and responding to questions. This testimony does not violate *State v. Doan, supra*, because it offers no opinion or validation as to the reliability of the information the child has provided.

Moreover, S.H. offered similar testimony regarding the two forensic interviews she underwent. She acknowledged that during her first interview she was "really scared," uncomfortable, and "freaking out" because she was not prepared to answer questions, explaining that she had never previously described the abuse or shared any details of it "out loud." S.H. testified that she was not comfortable providing detailed information during her first interview. S.H. explained that during her second interview, however, she felt more prepared and had spoken about the abuse out loud by that time, so she disclosed more details during that interview. In other words, she was in the stage of nonactive disclosure during the first interview and active disclosure during the second interview.

Furthermore, the fact that S.H. provided little information during her first interview and offered greater detail during her second was not a surprise to the jury and was developed through other witnesses in addition to the forensic interviewer and S.H. These facts support the defense theory that as S.H. talked to more people, including M.H., her aunts, the police detective, and her counselor, she offered additional details about the abuse that she had never previously disclosed.

Given the foregoing, we conclude that the interviewer's testimony was not inadmissible. Thus, trial counsel was not ineffective in failing to object to it, and as such, appellate counsel was not ineffective in failing to assign this issue as error on direct appeal. The district court therefore properly denied an evidentiary hearing as to this claim.

Finally, Howard alleges that his appellate counsel was ineffective in failing to assign as error his trial counsel's failure to object when the State elicited testimony from S.H.'s counselor describing the details of the abuse S.H. conveyed to her during counseling sessions. Howard argues that the testimony

constitutes prior consistent statements and was inadmissible because the statements were made after the time the initial allegations were disclosed. We conclude that even if the counselor's testimony in this regard was inadmissible as a prior consistent statement, Howard cannot show he was prejudiced by trial counsel's failure to object because such testimony supported the defense theme at trial.

Defense counsel called S.H.'s counselor to testify as a witness. He questioned her regarding her sessions with S.H. and referenced notes she took during the sessions. He elicited testimony from the counselor that she indicated in her notes that S.H. raised "new memories" during a later session; that S.H. talked with M.H. prior to raising the allegations of oral sex, which she had never previously disclosed; that the counselor had helped S.H. prepare to testify and worked with her on "telling a good story;" and that she held joint counseling sessions with S.H. and M.H. despite the prosecutor asking her not to do so. Likewise, during cross-examination of the counselor, the State questioned her on the details she included in her notes of the information S.H. provided to her during counseling, which described the progression of S.H.'s allegations from inappropriate touching in the bathtub to numerous instances of oral sex.

Trial counsel made the defense theme clear during opening statements and closing arguments. During his opening statement, he explained that from the defense's perspective, "This case . . . is about the evolution of a story, about how someone can start believing their own lie." Trial counsel outlined that during the case, the jury would hear from S.H.'s counselor "about working with her to remember anything, about preparing her and building her up to testify during the course of this case." Trial counsel described that the jury would hear that M.H. made the first allegation to her aunt and then talked to her aunt, mother, and S.H. In addition, trial counsel explained that the evidence would show that M.H. told S.H. about a dream she had involving Howard forcing her to perform oral

sex, and just a few days later, S.H. came forward and alleged that the same thing happened to her in the same way that M.H. described. Trial counsel further informed the jury that it would hear from an expert witness that memories can be created based upon postevent information, even if those memories are false.

During closing arguments, trial counsel reiterated the defense theme regarding the evolution of a story and how someone can start believing their own lie. He argued that M.H.'s and S.H.'s stories evolved over time and referenced S.H.'s counselor to show that the information S.H. provided to her, as detailed in the counselor's notes, had changed, which he argued indicated that M.H. and S.H. were "building up the story." Trial counsel asserted that the counseling notes indicated S.H. said she did, in fact, discuss things with M.H. and that S.H.'s story was continuing to develop into late 2015 and early 2016. At one point during his closing argument, he referenced a particular counseling session note, and stated, "We keep getting into these particular sessions and that's because they're important."

Based on our review of the record, we conclude that the testimony of S.H.'s counselor, and the details of her session notes in particular, were pertinent and relevant to the defense strategy of attempting to show the progression of the victims' allegations in order to demonstrate that they were falsified. As such, trial counsel was not ineffective in eliciting specific testimony from the counselor or failing to object to her testimony on these topics during cross-examination; thus, appellate counsel was not ineffective in failing to raise this issue on appeal. The district court therefore did not err in denying an evidentiary hearing on this claim.

## CONCLUSION

Having concluded that the district court did not err in denying Howard's motion for postconviction relief without an evidentiary hearing, we affirm the court's order.

Affirmed.