IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. WHEELER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JANUARY T. WHEELER, APPELLANT.

Filed May 13, 2025.    No. A-24-695.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Mark E. Rappl, of Naylor & Rappl Law Office, for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

PIRTLE, BISHOP, and WELCH, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

This appeal arises from a petition for postconviction relief filed by January T. Wheeler. Wheeler was convicted in the district court for Lancaster County on one count of possession of a firearm by a prohibited person and sentenced to 25 to 30 years' imprisonment. His motion for postconviction relief alleged that his trial counsel was ineffective for failing to call material witnesses to testify at trial and that his appellate counsel was also ineffective in a variety of ways. The district court denied his postconviction motion without an evidentiary hearing. For the reasons that follow, we affirm.

## II. BACKGROUND

On December 6, 2020, law enforcement was investigating a shooting that occurred in Lincoln, Nebraska. We previously relayed the relevant facts in *State v. Wheeler*, No. A-21-1036,

2022 WL 16557378 (Neb. App. Nov. 1, 2022) (selected for posting to court website), *affirmed on other grounds* 314 Neb. 282, 989 N.W.2d 728 (2023):

On the night in question, law enforcement responded to three separate reports of arguing and gunshots in the area of Blue Flame Road. One of the calls came from a next-door neighbor, Kortney Jackson, who testified at trial that she heard people arguing outside just before 12:30 a.m. Jackson was prompted to call 911 when she heard someone say, "Do it, do it," followed by the sound of three gunshots in rapid succession.

Upon arrival, law enforcement officers located a trail of blood droplets extending from the end of the driveway to the front door of the home. The exigent circumstances justified a cursory search of the home, which revealed additional blood droplets inside. Outside the home, officers discovered four spent shell casings and one spent bullet. Officers also learned of an individual being treated for apparent gunshot wounds at a nearby hospital. This individual was later identified as Brandon Wagner. Wagner had three bullet wounds: one on the left side of his chest, one on the lower left side of his back, and a "grazing wound" on his upper back. Wagner survived his wounds but remained in the hospital for almost a month.

The evidence at trial revealed that a mutual friend, Kristian Hespen, introduced Wagner to Wheeler a couple weeks prior to the shooting, and the three men began working together to acquire and sell drugs. As part of this enterprise, Wagner gave Wheeler various items to either sell or exchange for drugs. Wagner estimated that the items were worth a total of approximately $400. It is unclear what happened to the items, but Wagner began to insist that Wheeler either pay for or return them. Tensions between Wagner and Wheeler continued to rise until the day of the shooting when Wagner confronted Wheeler at the house on Blue Flame Road.

When Wagner arrived at the house, his intentions were clear; "I was getting paid or we were fighting, one or the other." Wagner testified that he first encountered Hespen in the driveway of the home. After a brief exchange with Hespen, Wagner approached the front door of the home in search of Wheeler. According to Wagner, he opened the front door and immediately saw Wheeler holding a tan handgun with an extended clip. There was conflicting evidence as to precisely how the ensuing altercation played out; however, the record is clear that Wagner was ultimately shot three times, and both Wagner and Hespen positively identified Wheeler as the shooter. Wheeler was also injured in the altercation, and the trail of blood droplets discovered at the scene was later attributed to Wheeler.

Hespen testified that immediately after the shooting, while Hespen was helping Wagner into his car, Wheeler gave Hespen the gun and told him to "get rid of this." Hespen took the gun and later left it in an apartment located on Saint Paul Avenue. A few weeks later, law enforcement officers executed an unrelated search warrant at that apartment and seized a tan Glock 9 millimeter handgun with an extended clip. Wheeler's blood was discovered inside the barrel of the seized gun, and forensic analysis linked the gun to the spent casings and bullet discovered at the scene.

Upon examining the tan Glock 9 millimeter at trial, Hespen identified it as Wheeler's gun, noting a distinctive belt clip attached to the side of the gun. In addition to

seeing Wheeler with the gun at the time of the shooting, Wagner and Hespen both testified to seeing the same gun at Wheeler's apartment sometime in the weeks leading up to the shooting. Wagner also testified that Wheeler was generally known to carry a gun around that time.

On November 10, after a jury trial, Wheeler was convicted of possession of a firearm by a prohibited person. He was subsequently sentenced to 25 to 30 years' imprisonment with credit for 339 days served.

As relevant on direct appeal, Wheeler assigned that his trial counsel was ineffective for failing to (1) object to evidence that he was previously seen with a gun, (2) object to evidence regarding his character for possessing firearms, (3) offer cell phone records to impeach Wagner's testimony, (4) call three witnesses to testify, and (5) properly impeach Wagner's testimony. On November 1, 2022, this Court issued a memorandum web opinion that determined Wheeler's first, second, and fifth claims were refuted by the record and that he could not show he was prejudiced by his third claim. This left only his fourth claim, where he alleged his trial counsel was ineffective because he did not call three witnesses to testify at trial. The three witnesses were Desiree Allen, Michael Carmen, and Jinny Greer. We determined the record was insufficient to resolve this claim on direct appeal and preserved it for postconviction purposes. On May 19, 2023, the Nebraska Supreme Court affirmed our rulings, albeit on different grounds.

On May 23, 2023, Wheeler filed a verified motion for postconviction relief. In this motion, he alleged his trial counsel was ineffective for failing to call Allen, Carmen, and Greer as witnesses at trial. He also alleged his appellate counsel was ineffective because he failed to allege his trial counsel was ineffective for failing to (a) object to Hespen's testimony regarding his reputation for possessing firearms; (b) present evidence to establish that he did not have an apartment at the time he was associated with Wagner and Hespen; and (c) call Rosita Wheeler, Robert Williamson, and Nick Roberts as witnesses at trial. On May 30, 2024, the district court ordered the State to respond to Wheeler's motion. On August 8, the State filed its response.

On August 20, 2024, the district court issued an order denying Wheeler's motion for postconviction relief without an evidentiary hearing. The court's order did not provide any analysis and stated, "I have reviewed the record in this case in the light of the applicable case law and find [Wheeler] is not entitled to an evidentiary hearing or to post-conviction relief."

Wheeler now appeals.

## III. ASSIGNMENTS OF ERROR

Restated, Wheeler assigns the district court erred (1) by not holding a records hearing or identifying the files and records it relied upon in denying his motion for postconviction relief and (2) by denying his motion for postconviction relief without an evidentiary hearing.

## IV. STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Meyer*, 30 Neb. App. 662, 971 N.W.2d 185 (2022).

- 3 -

## V. ANALYSIS

In Nebraska, postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Lotter*, 311 Neb. 878, 976 N.W.2d 721 (2022). Under the postconviction statutes, defendants in custody under sentence "may file a verified motion, in the court which imposed such sentence, stating the grounds relied upon and asking the court to vacate or set aside the sentence." *Id.* at 886, 976 N.W.2d at 730. Such a motion must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *Id.*

The Nebraska Postconviction Act requires a court to grant a prompt hearing on a motion for postconviction relief "[u]nless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief. . . ." *State v. Lotter*, 311 Neb. at 887, 976 N.W.2d at 730. The "files and records of the case," as the term is used in Neb. Rev. Stat. § 29-3001(2) (Cum. Supp. 2023), upon which a postconviction court should rely in denying an evidentiary hearing, are the files and records existing before the postconviction motion is filed. *State v. Howard*, 29 Neb. App. 860, 961 N.W.2d 560 (2021). A trial court is allowed discretion to adopt its own reasonable procedures for determining what files and records it should review, so long as that discretion comports with the specific procedural rules mandated by § 29-3001. *State v. Howard, supra.*

### 1. NOT HOLDING RECORDS HEARING OR IDENTIFYING RECORDS

Wheeler first assigns the district court abused its discretion by not holding a records hearing, or in the alternative, failing to identify what records it relied upon in denying his motion for postconviction relief without an evidentiary hearing. He asserts this constituted an abuse of discretion because without specifically identifying what records it reviewed or certifying and including those records in the transcript, an appellate court is unable to determine whether those same documents appear in the record on appeal. In contrast, the State argues the court's reference to "the record in this case" was clearly referring to the trial record, the same record reviewed by this Court and the Supreme Court on direct appeal.

In his argument, Wheeler primarily relies upon the holdings in *State v. Lee*, 282 Neb. 652, 807 N.W.2d 96 (2011) and *State v. Torres*, 300 Neb. 694, 915 N.W.2d 596 (2018). In *State v. Lee, supra*, the defendant filed a postconviction motion asserting his right to a speedy trial had been violated. The trial court denied this motion without an evidentiary hearing because it found that the defendant had requested several continuances, which tolled the time the State had to commence the trial. However, on appeal, the Supreme Court observed that the files and records of the case did not include when the court granted the continuances or for how long the matters were continued. The court held that the trial court should have certified and included in the transcript all files and records it considered in denying the motion, which would have included any documents related to the supposed continuances. The Court stated that "the reason for this rule should be obvious" because "[w]hen the court denies an evidentiary hearing based upon documents it does not certify and include in the transcript, it effectively denies the movant a meaningful appeal." *Id.* at 665, 807 N.W.2d at 107.

In *State v. Torres, supra*, the defendant asserted that the trial court erred in denying his motion for postconviction relief without an evidentiary hearing because it did not hold a records hearing or otherwise identify the files and records it relied upon. However, on appeal the Supreme Court noted that the trial court's order had made express findings regarding the history of the defendant's case and based those findings on its review of the "files and records" in the case. *Id.* The Court also observed that the trial court's order made specific findings regarding various dates relevant to its conclusion that the motion was barred by the 1-year statute of limitations. *Id.* Because of these specific findings, the Supreme Court held that it was plainly evident which files and records the trial court had relied upon, that those records existed before the postconviction motion was filed, and that the records were contained in the appellate transcript. *Id.*

In the current matter, we first note that nothing in § 29-3001(2) requires a court to make specific findings as to why it denies a motion for postconviction relief without an evidentiary hearing. And although not required to do so, we would suggest it is a "best practice" for a district court to provide a more detailed analysis explaining why a defendant is not entitled to an evidentiary hearing.

Nevertheless, despite the district court's lack of specificity or mention of particular documents that it relied upon, we determine its use of the phrase "record in this case" plainly refers to the trial record that was available to this court and the Supreme Court on direct appeal. See *State v. Howard*, 29 Neb. App. 860, 867, 961 N.W.2d 560, 568 (2021) (stating "the files and records upon which the district court relied existed before Howard filed his motion for postconviction relief and were available to and considered by this court on direct appeal"). Because of this, we determine the record is sufficient to identify the files and records the district court considered, which are included in our record. Therefore, we are able to conduct a meaningful review of the court's decision. Accordingly, we determine the court did not abuse its discretion in the procedure it followed.

## 2. DENYING WHEELER'S MOTION WITHOUT EVIDENTIARY HEARING

Wheeler next assigns the district court erred by denying his motion for postconviction relief without an evidentiary hearing. His postconviction motion contained four claims of ineffective assistance. These claims were that (1) his trial counsel was ineffective for failing to call Allen, Greer, and Carmen, as witnesses at trial; and (2) his appellate counsel was ineffective for failing to assign as error on direct appeal that his trial counsel was ineffective for failing to (a) object to Hespen's testimony regarding his reputation for possessing firearms; (b) present evidence to establish that he did not have an apartment at the time he was associated with Wagner and Hespen; and (c) call Rosita, Williamson, and Roberts as witnesses at trial.

A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial. *State v. Goynes*, 318 Neb. 413, 16 N.W.3d 373 (2025). To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Goynes, supra.* To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* Courts give counsel's acts a strong presumption of reasonableness. *Id.*

To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* When considering the prejudice prong of ineffective assistance of counsel, we focus on whether a trial counsel's deficient performance renders the result of the trial unreliable or fundamentally unfair. *Id.*

When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on direct appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will first look at whether trial counsel was ineffective under the test in *Strickland v. Washington, supra. State v. Betancourt-Garcia*, 317 Neb. 174, 9 N.W.3d 426 (2024). If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. *Id.*

(a) Ineffective Assistance of Trial Counsel

Wheeler assigns his trial counsel was ineffective for not calling Allen, Greer, and Carmen, as witnesses at trial. He essentially argues these individuals would have provided testimony that contradicted the evidence the jury likely relied upon in finding him guilty of possessing a firearm while prohibited from doing so.

*(i) Desiree Allen*

Wheeler asserts Allen would have testified that she, Greer, and Wheeler, were inside the home when Wagner was shot; that she never saw Wheeler possess a firearm on the night in question; and that after the shooting, she saw a heavy-set white male standing near the vehicle Wagner arrived in who later left in that vehicle. Wheeler argues the testimony about the white male could have provided an additional witness for law enforcement to speak to and potentially another suspect to investigate.

We determine this claim of ineffective assistance fails because Wheeler is unable to demonstrate his trial counsel was deficient for failing to call Allen as a witness. On November 1, 2021, Allen failed to attend a hearing although she had been previously served a subpoena ordering her to appear. Notably, the subpoena was served to her while she was at the Lancaster County Jail. Due to her failure to appear, the court found her in contempt and issued a bench warrant for her arrest. This warrant remained active throughout Wheeler's trial, but law enforcement was unable to locate Allen. At trial, Chris Milisits, a Lincoln police officer who assisted in the underlying investigation, testified that he had been unsuccessful in locating Allen because she was transient and difficult to find.

We determine the record refutes this allegation of ineffective assistance because counsel cannot be deficient in failing to call a witness that cannot be located. As such, we determine this claim of ineffective assistance fails.

*(ii) Jinny Greer*

Wheeler next argues that Greer, who was Wheeler's girlfriend at the time, would have testified that Wheeler entered the home prior to the shooting with a head injury and was receiving treatment from Greer at the time of the shooting. He asserts this could have provided an alternative

explanation as to how his blood ended up in the barrel of the firearm because it supports a theory that he had been hit in the head with it. Wheeler also asserts Greer would have testified that he did not have an apartment during this time and instead lived with his mother. Therefore, he provides that Greer's testimony would have demonstrated that Hespen and Wagner's testimonies about seeing a firearm in his apartment were false.

We determine this claim of ineffective assistance fails because Wheeler is unable to demonstrate a reasonable probability that the outcome of the proceeding would have been different if Greer had testified. Even if Greer testified to everything that Wheeler claims she would, when taken as a whole, the evidence still supports that he possessed a firearm while being a prohibited person.

At trial, Wagner and Hespen both identified Wheeler as the person who shot Wagner. Wagner explained that he went to find Wheeler because he owed him money. In searching for him, he went to Hespen's house because he thought Wheeler would be there. Upon arriving at the house, Carmen, who had accompanied Wagner, started fighting with Hespen, who was outside. Wagner then entered the house and saw Wheeler pointing a firearm at him. Wagner turned around to leave but was shot several times while walking away. Once he realized he was shot, he attempted to fight Wheeler by hitting him in the head with a flashlight. After hitting him several times, Wagner stumbled to his vehicle while Hespen got in the driver's seat. Wheeler then approached the vehicle and threw the firearm in Hespen's lap. In addition to this testimony placing the gun in Wheeler's possession on the night of the incident, Wagner also testified that he knew Wheeler usually carried a handgun with him and gave a description of the firearm that matched the 9 millimeter Glock eventually recovered by law enforcement.

Hespen's account paralleled Wagner's. For reasons unspecified, when Hespen saw that Carmen was with Wagner, Hespen started to fight him. Then while fighting Carmen, Hespen heard multiple gun shots and saw Wagner fall to the ground. Hespen got into Wagner's car to take him to the hospital when Wheeler approached and threw the firearm in his lap. After dropping Wagner off at the hospital, Hespen said he met with Wheeler to figure out what happened. He said that Wheeler told him Wagner "pulled a pistol on him [so] he did what he had to do." Hespen then carried the firearm around for several weeks until it was discovered by law enforcement in an unrelated incident. Hespen testified that he had seen Wheeler with the same brown handgun with an extended clip several times before, knew that Wheeler usually carried a gun, and identified the recovered handgun as Wheeler's.

Additionally, at trial, several witnesses discussed the various blood spatter discovered around the residence and the blood located inside the barrel of the handgun. Milisits stated that he sent seven blood samples to the Nebraska Stata Crime Lab for testing. These samples were taken from the trail of blood that went from the street toward the door of the residence. Brandy Porter, a DNA analyst, tested those samples and determined that all seven matched Wheeler's DNA. This aligns with Wagner's account of hitting Wheeler with a flashlight after being shot and that Wagner approached the vehicle afterward. Several witnesses also discussed how Wheeler's blood was found in the barrel of the firearm.

Given the consistency of Wagner and Hespen's accounts, their testimonies that they had previously seen Wheeler with the handgun in question, their ability to accurately describe the handgun, and Wheeler's blood being found inside the barrel of the firearm, we determine that even

if Greer had testified, there was not a reasonable probability that her testimony would have changed the outcome of the proceeding. Her proposed testimony envisions an entirely different scenario than the one currently supported by the evidence. And most notably, her proposed account does not provide a rational explanation for how Wheeler's blood ended up in the barrel of the handgun. While Wheeler asserts that her proposed testimony supports a scenario where he was hit in the head with the firearm, there is no other evidence to support that theory. More specifically, there was no evidence that anyone but Wheeler possessed a firearm that night nor any other evidence that Wheeler was hit in the head with the firearm. Therefore, we conclude this claim of ineffective assistance fails.

### (iii) Michael Carmen

Wheeler next asserts that if Carmen was called to testify, he would have testified that he was not outside the home when Wagner was shot.

We determine this claim of ineffective assistance fails because Wheeler is unable to demonstrate his trial counsel was deficient for failing to call Carmen as a witness. On October 6, 2021, the State issued a subpoena with a Lincoln address to secure Carmen's attendance at a deposition. However, the subpoena was not served because an apartment number was not included in the address. On October 25, the State issued another subpoena, but law enforcement was again unable to serve Carmen. In its report, the Lancaster County Sheriff's Office provided that Carmen was no longer living in Lincoln and had moved somewhere near Scottsbluff.

At Wheeler's trial, Milisits testified about his attempts to locate Carmen. He stated that he had interviewed Carmen on March 24, 2021, and that he confirmed he was present when the shooting happened. However, Carmen refused to tell Milisits any other information. Milisits did not speak to Carmen again and was subsequently unable to find him.

We determine the record refutes this allegation of ineffective assistance because counsel cannot be deficient in failing to call a witness that cannot be located. Therefore, we determine this claim of ineffective assistance fails.

### (b) Ineffective Assistance of Appellate Counsel

Wheeler next assigns his appellate counsel was ineffective for failing to assign as error on direct appeal that his trial counsel was ineffective for failing to (1) object to Hespen's testimony regarding his reputation for possessing firearms; (2) present evidence to establish that he did not have an apartment at the time he was associated with Wagner and Hespen; and (3) call Rosita, Williamson, and Roberts, as witnesses at trial.

### (i) Failure to Object to Evidence Regarding Wheeler's
### Reputation for Possessing Firearms

Wheeler asserts his appellate counsel was ineffective for not assigning on direct appeal that his trial counsel was ineffective for failing to object when Hespen testified about Wheeler's reputation for carrying a firearm.

On direct appeal to the Court of Appeals, Wheeler's appellate counsel assigned that his trial counsel was ineffective for failing to object when Wagner testified that Wheeler was known to carry a firearm. *State v. Wheeler*, No. A-21-1036, 2022 WL 16557378 (Neb. App. Nov. 1, 2022)

(selected for posting to court website). We determined this claim was refuted by the record because the testimony was outside the scope of Neb. Rev. Stat. § 27-404 (Reissue 2016). However, on further review by the Supreme Court, it determined rule 404 applied to Wagner's testimony, but that Wheeler was not prejudiced by his trial counsel's failure to object. Specifically, the court held:

> Here, [Wagner's] testimony of Wheeler's reputation for possessing a gun was cumulative of [Hespen's] testimony that Wheeler was known to carry a gun. Because Wheeler does not assign that his trial counsel was ineffective for failing to object to [Hespen's] similar testimony as to Wheeler's reputation, his trial counsel cannot be ineffective for failing to object to the cumulative evidence of his reputation.

*State v. Wheeler*, 314 Neb. 282, 290, 989 N.W.2d 728, 736-37 (2023). Based on this holding, Wheeler now asserts that if his trial counsel had objected to both Wagner and Hespen's testimonies, the testimonies would have been excluded. Therefore, he argues his appellate counsel should have assigned that his trial counsel was ineffective for failing to object to both testimonies and that the failure to do so prejudiced his case.

However, Wheeler's argument ignores the next portion of the Supreme Court's analysis. Following the paragraph previously cited, the court stated:

> Further, as the Court of Appeals concluded below, other competent evidence supports Wheeler's conviction. [Wagner] and [Hespen] identified Wheeler as the shooter and said that Wheeler possessed the Glock when he gave it to [Hespen] afterward. [Wagner] testified that he saw Wheeler in possession of the Glock when he entered the trailer. Wheeler's blood was also found inside the barrel of the Glock. This competent evidence supports Wheeler's conviction.
>
> Because [Wagner's] testimony as to Wheeler's reputation was cumulative, and other competent evidence exists to support Wheeler's conviction, there is not a reasonable probability that but for his trial counsel's failure to object to this evidence, the result of the proceeding would have been different.

*Id.* at 290-91, 989 N.W.2d at 737.

We similarly determine that Wheeler is unable to show he was prejudiced by his appellate counsel's alleged failure because, even if his trial counsel had objected to Hespen's testimony, there is not a reasonable probability that the outcome of the proceeding would have changed. Although Wheeler asserts that Wagner and Hespen's testimonies regarding his reputation for carrying a firearm were critical to the jury's verdict, we determine there was substantial other evidence the jury could have relied upon to convict him. That evidence includes Wagner's testimony that he saw Wheeler point the firearm at him as he entered the residence, Wheeler's blood being found inside the barrel of the firearm, and Wagner and Hespen both identifying Wheeler as the shooter, stating that the firearm belonged to Wheeler, and testifying that Wheeler dropped the firearm in Hespen's lap after the incident. Given this evidence, we conclude there is not a reasonable probability that the outcome of the proceeding would have been different if Wagner and Hespen's testimonies concerning Wheeler's reputation for carrying a firearm had been excluded. Therefore, we determine this ineffective assistance claim fails.

*(ii) Failure to Present Evidence Wheeler Did Not Have Apartment*

Wheeler next assigns his appellate counsel was ineffective for failing to assign as error on direct appeal that his trial counsel was ineffective for not presenting evidence to show that he did not have an apartment when Wagner and Hespen claimed to have seen a firearm there.

We determine that Wheeler is unable to show he was prejudiced by this alleged failure of his appellate counsel because even if this testimony was adduced at trial, there was other competent evidence the jury could have relied upon to convict Wheeler. As stated previously, Wagner testified that Wheeler pointed the firearm at him as he entered the residence, Wagner and Hespen each identified Wheeler as the shooter, Wagner and Hespen both accurately described the handgun in question, and both testified that Wheeler dropped the firearm in Hespen's lap after the incident. Further, Wheeler's blood was found inside the barrel of the firearm. Because other competent evidence supported Wheeler's conviction, we determine there is not a reasonable probability that the result of the proceeding would have been different if Wheeler's trial counsel produced evidence that he did not live in an apartment when Wagner and Hespen claimed to have seen a firearm there. Therefore, we determine this ineffective assistance claim fails.

*(iii) Failure to Call Other Witnesses*

Wheeler lastly assigns that his appellate counsel was ineffective for failing to assign on direct appeal that his trial counsel was ineffective for failing to call Rosita, Williamson, and Roberts as witnesses at trial.

Wheeler asserts Rosita would have testified that he did not have an apartment at the time he associated with Wagner and Hespen. As we discussed in the previous section, there is not a reasonable probability the outcome of the proceedings would have changed even if testimony was adduced that Wheeler did not live at an apartment during the time that Hespen and Wagner claimed to have seen a firearm there. For the same reasons articulated above, we determine this claim of ineffective assistance fails.

Wheeler next claims that Williamson and Roberts would have both testified they were outside of the residence when Wagner was shot. He asserts their testimonies would have established that Wheeler did not shoot Wagner because he was not outside at the time of the shooting.

We determine there is not a reasonable probability that even if these proposed testimonies were offered at trial that the outcome of the proceeding would have been different. At trial, Wagner and Hespen both testified the only people at the residence that night were them, Wheeler, Carmen, Allen, and Greer. Further, Hespen indicated that Roberts and Williamson only learned about the incident after he told them about it afterward.

Beyond this evidence contradicting Wheeler's claim that Williamson and Roberts were present when the shooting occurred, there was substantial evidence adduced at trial that proved Wheeler possessed a firearm when he was prohibited from doing so. This evidence includes Wagner and Hespen's similar accounts of what occurred, Hespen recognizing that the firearm belonged to Wheeler, and Wheeler's blood being found inside the barrel of the firearm. Notably, neither Williamson nor Roberts' proposed testimony provides an explanation for how Wheeler's blood ended up inside the firearm. Because Wheeler's conviction was supported by other

competent evidence, we determine he is unable to demonstrate he was prejudiced by these alleged errors of his appellate counsel. Therefore, we conclude that this ineffective assistance claim fails.

## VI. CONCLUSION

We determine the district court did not abuse its discretion although it did not specifically identify the records it relied upon in denying Wheeler's motion for postconviction relief without an evidentiary hearing. We determine Wheeler is unable to show his trial counsel was deficient for not calling Allen and Carmen as witnesses at trial. We also determine that he is unable to demonstrate he was prejudiced by his trial counsel not calling Greer as a witness. Lastly, we determine Wheeler is unable to show he was prejudiced by the alleged errors of his appellate counsel because even if the relevant evidence was excluded or adduced, there was other competent evidence to support his conviction.

AFFIRMED.